U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

APR 1 6 2014

CLERK, U.S. DISTRICT COURT
By _____
                    Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

IN RE MOTION FOR SANCTIONS     §
AGAINST SCOTT MEYERS, SUSAN    §   NO. 4:12-MC-015-A
MEYERS, AND CYNTHIA COLE       §

MEMORANDUM OPINION
and
ORDER

On April 9 and 10, 2014, the court conducted a hearing on requests by Textron Financial Corporation ("Textron") for sanctions against Scott Meyers, Susan Meyers (collectively, the "Meyerses") and their attorney, Cynthia Cole ("Cole"). At the same hearing, the court heard from the Meyerses and Cole as to why they should not be sanctioned for their violations, by noncompliance, of eleven orders issued at various times from October 31, 2013, through March 21, 2014,[1] in the above-captioned miscellaneous action.

At the end of the hearing on April 10, the court made findings and conclusions on the record pertinent to Textron's Rule 11 motion for sanctions against the Meyerses and Cole and Textron's request for sanctions against Cole for its expenses of litigation under the authority of 28 U.S.C. § 1927; and, the court expressed the conclusions that those motions should be

---

[1] All but one of the orders required the Meyerses and Cole all to take certain actions by dates specified in the respective orders. One of the orders required Cole to take certain action by a certain date.

70

granted and that as sanctions the Meyerses and Cole should be required to pay to Textron $79,424.21, representing the total of reasonable attorneys' fees and expenses necessarily incurred by Textron in the district court defense of a lawsuit brought by the Meyerses, through Cole, against Textron in this court on June 1, 2012. The court held in abeyance for future ruling, and awaiting the outcome of further briefing by the parties, the request by Textron for sanctions against the Meyerses and Cole under the inherent power of the court, as contemplated by Chambers v. NASCO, Inc., 501 U.S. 32, 47 (1991). Also, the court is further considering the issue of sanctions, if any, to impose because of the violations, by noncompliance, of the Meyerses and Cole of the court's orders.

The court is issuing this memorandum opinion for the purpose of supplementing facts and conclusions stated by the court on the record at the conclusion of the hearing and to put in written form the sanctions rulings the court announced on the record at the hearing.

I.

Nature of Textron's Sanctions Requests

A.    The Filing and Severance of the Rule 11 Motion

Textron's Rule 11 motion focused on the presentation to the court by Cole of pleadings that she signed, filed, and later

2

advocated in the two lawsuits which were initiated by the Meyerses against Textron in this court on June 1, 2012. One of the lawsuits, Case No. 4:12-CV-353 (the "353 Lawsuit"), was brought by the Meyerses and Cole in the name of Rocky Mountain Choppers, LLC ("Rocky Mountain") against Textron. The other named the Meyerses and Rocky Mountain as plaintiffs and Textron and two other entities as defendants and was assigned Case No. 4:12-CV-352 (the "352 Lawsuit").

Textron's Rule 11 motion was filed in the 352 and 353 Lawsuits, as consolidated, on August 29, 2012, when those cases were pending on the docket of Judge Terry Means of this court. After consolidating the two actions, Judge Means, on September 20, 2012, transferred the consolidated actions to the docket of the undersigned in response to a motion filed by Textron noting the undersigned's familiarity with the facts and law pertaining to the action by reason of having presided over an earlier action initiated by the Meyerses against Textron that was based on the same claims that were asserted by the Meyerses, in the name of Rocky Mountain, against Textron in the 353 Lawsuit.

On September 26, 2012, the court, acting through the undersigned, severed back into separate actions the two lawsuits, dismissed the 352 Lawsuit for want of subject matter jurisdiction, and severed Textron's Rule 11 motion into the

above-captioned miscellaneous action No. 4:12-MC-015-A for
separate handling.

B.    The Nature and Severance of Textron's Other Requests for
      Sanctions

        Textron included in its October 30, 2012 motion to dismiss
the 353 Lawsuit a general request that the Meyerses and Cole be
sanctioned for their inappropriate litigation conduct, pursuant
to this court's inherent power to sanction abusive litigation
practices, by being required to reimburse Textron for its
litigation expenses.  When the court granted Textron's motion to
dismiss by a memorandum opinion and order and final judgment
issued in the 353 Lawsuit on December 3, 2012, the court ordered
that the requests for sanctions made by Textron in the motion be
severed from the 353 Lawsuit and made a part of the above-
captioned miscellaneous action.

        On October 31, 2013, shortly after the United States Court
of Appeals for the Fifth Circuit affirmed this court's dismissal
of the claims asserted by the Meyerses against Textron in the 353
Lawsuit, this court issued an order requiring Textron to file a
document providing appropriate supplementation of its requests
for sanctions and clarifying certain matters relating to those
requests.  In response, Textron filed, on November 19, 2013, its
supplemental memorandum in which it added to its Rule 11 and

4

inherent power sanctions requests, the further request that it, alternatively, have recovery of its attorneys' fees and other litigation expenses against Cole under the authority of 28 U.S.C. § 1927 based on her conduct in bad faith and vexatiously multiplying the proceedings against Textron.

At the April 9-10 hearing, Textron's counsel made known that Textron was urging the court to exercise its inherent power to impose additional sanctions on the Meyerses and Cole in the form of an order requiring them, jointly and severally, to reimburse Textron for litigation expenses it has incurred in connection with this miscellaneous action. Because of a concern the court had that the Meyerses and Cole had not been given sufficient notice of that request, the court did not make findings or express conclusions at the April 9-10 hearing pertinent to that matter. The court fixed a deadline for the parties to make filings in support of and in opposition to that matter.

## II.

### Supplemental Findings and Conclusions Related to the Rule 11 and § 1927 Sanctions

A. The Rule 11 Sanctions

1. The Violation by Cole of Her Deemed Certification that the Factual Contentions Had Evidentiary Support

Central to Textron's contention that Cole violated her deemed Rule 11(b)(3) certification that the factual contentions

5

in the complaint she filed in the 353 Lawsuit had evidentiary support is that the complaint contained a false allegation relative to the identity of the lender who provided the funding for the purchase by AIH Acquisitions, LLC ("AIHA") of the assets of American IronHorse Motorcycle Company, Inc. ("AIMC").

The 353 Lawsuit was initiated and prosecuted on the basis of the allegation that the funding for the purchase by AIHA (a name used by the Meyerses in their business operations) of the assets of AIMC was by Rocky Mountain (another name used by the Meyerses in their business operations). The theory of the lawsuit was that Rocky Mountain should recover damages from Textron because of having been fraudulently induced by Textron to provide the funding. Included in the 353 Lawsuit complaint, were the following allegations:

> 6. By the time AIMC was forced into its bankruptcy proceeding, Textron was determined to exit the asset based lending industry and as such, had a need to reduce its exposure related to the AIMC loan and the Textron Motorcycle Inventory. In order to reduce the loss associated with the AIMC transaction, it was imperative that Textron locate a party to infuse enough cash to keep the American Ironhorse® brand alive while it liquidated its inventory of AIMC motorcycles. Rocky Mountain Choppers, LLC, an entity owned by Scott and Susan Meyers, ultimately funded Textron's exit.

> 7. AIH Acquisitions, LLC ("AIHA") was formed by the Meyers in response to the initiation of the AIMC's bankruptcy. Its purpose was to purchase the American Ironhorse® brand and related manufacturing assets from AIMC. The ultimate goal was to maintain and protect

6

the brand and continue the tradition of the American
IronHorse® motorcycle. The funds used to complete the
acquisition of AIMC were paid directly by RMC.

Textron Ex. 55 at 2-3, ¶¶ 6-7. Similar allegations related to

Rocky Mountain's involvement in AIHA's purchase of the AIMC

assets were made in paragraphs 8 and 10 of the complaint. Id. at

3-4, ¶¶ 8-10.

Those allegations in the 353 Lawsuit were directly contrary

to allegations the Meyerses, more often than not acting through

Cole, had made in a series of filings in AIHA's bankruptcy case

starting in August 2009 and going through February 7, 2011. The

Meyerses and Cole knew that the allegations made in the 353

Lawsuit that the funds used to complete the acquisition of AIMC

were provided by Rocky Mountain were false when they made those

allegations. Nothing could more pointedly establish that fact

than allegations the Meyerses, directly acting through Cole with

one exception, made in multiple filings in the AIHA bankruptcy

proceedings. Indeed, the allegations in the 353 Lawsuit were

directly contradicted by allegations the Meyerses, acting through

Cole, made in the 352 Lawsuit that was filed the same day of the

filing of the 353 Lawsuit. Set forth below are the instances

when the Meyerses and Cole represented in judicial proceedings

that the Meyerses, and no one else, provided the funds for the
purchase by AIHA of the assets of AIMC:

    1.   On August 7, 2009, the Meyerses, acting in the
name of AIHA, alleged in a complaint, on which Cole was the
signatory attorney, initiating an adversary proceeding
against Textron in AIHA's bankruptcy case that:

> Textron pursued Scott and Susan Meyers (the
> 'Meyers Lenders') with multiple false promises and
> assurances to persuade them to advance initial
> financing in the form of a loan to a new entity
> [AIHA], which would then purchase the assets
> associated with the American IronHorse® motorcycle
> brand from Textron's then existing insolvent
> borrower.

Textron Ex. 7 at 2, ¶ 3.

    2.   On April 9, 2010, the Meyerses, acting through
Cole, filed in their own names in a district court of
Tarrant County, Texas, a lawsuit against Textron complaining
that Textron fraudulently induced them to agree to fund the
acquisition by AIHA of the assets of AIMC.   Textron Ex. 10.
The allegation was made in this pleading that:

> It was fundamental to Textron's plan that it be
> successful in inducing <u>the Meyers, individually,</u>
> to lend AIHA more than $2,500,000.00 (the "Meyers
> Loan") to facilitate AIHA's asset purchase from
> AIMC.  By failing to disclose this information,
> Textron lured the Meyers into the AIHA
> acquisition.

<u>Id.</u> at 4, ¶ 10 (emphasis added).

3.    On May 23, 2010, the Meyerses, acting through

Cole, filed a motion in an adversary proceeding in the AIHA

bankruptcy case for leave to file a petition in intervention

on behalf of the Meyerses against Textron in which they

alleged that:

> Before [AIHA] was formed, Textron pursued the
> Meyers with multiple false promises and assurances
> to persuade them to advance initial financing in
> the form of a loan to a new entity [AIHA], which
> would then purchase the assets associated with the
> American IronHorse® motorcycle brand from
> Textron's then existing insolvent borrower.

Textron Ex. 14 at 2, ¶ 2 (emphasis added).  The pleading

attached to the motion for leave as the pleading that would

be filed on behalf of the Meyerses if the motion were to be

granted was a pleading that appears to have been prepared by

Cole for the filing of another state court lawsuit by the

Meyerses against Textron.  Id., Ex. A.  That pleading

contained the following allegation:

> It was fundamental to Textron's plan that it be
> successful in inducing the Meyers, individually,
> to lend AIHA more than $2,500,000.00 (the "Meyers
> Loan") to facilitate AIHA's asset purchase from
> AIMC.  By failing to disclose the information
> received from these financial advisors, Textron
> lured the Meyers into the AIHA acquisition.

Id., Ex. A., at 4, ¶ 10 (emphasis added).

4.    On December 7, 2010, once leave of the bankruptcy

court was granted, the Meyerses, acting through Cole, filed

9

their petition in intervention in the adversary proceeding in AIHA's bankruptcy case in which allegations were made that were basically the same as the allegations that had been made in the state court action Cole had filed for the Meyerses on April 9, 2010, asserting that the Meyerses were the victims of Textron's alleged fraudulent inducement. Textron Ex. 33 at 10, ¶¶ 28-30. The nature of a claim being made by the Meyerses against Textron by this pleading was described as follows: "The Meyers sue Textron for fraudulently inducing the Meyers to agree to fund the *I*  \ acquisition." <u>Id.</u> at 9, ¶ 27. Not only did the Meyerses claim in this pleading that they were induced by intentional fraud on the part of Textron to agree to fund the AIHA acquisition, they further asserted that they were induced by negligent misrepresentation of Textron, alleging that "Textron supplied false information to the Meyers to guide them in their decision to fund the Meyers Loan" and that "[t]he Meyers suffered pecuniary loss by justifiably relying upon Textron's misrepresentations." <u>Id.</u> at 11, ¶ 34.

5.    On January 24, 2011, the Meyerses, acting through Cole, filed their first amended petition in intervention in the adversary proceeding in which they made the same fraudulent inducement allegations against Textron, this time

10

claiming, as they did in their original petition in intervention, that the Meyerses were the victims of Textron's alleged fraud. Textron Ex. 37. This pleading included the following allegations:

> By the time AIMC was forced into its bankruptcy proceeding, Textron was determined to exit the asset based lending industry and as such, had a need to reduce its exposure related to the AIMC loan and the Textron Inventory. In order to reduce the loss associated with the AIMC transaction, it was imperative that Textron locate a party to infuse enough cash to keep the American IronHorse® brand alive while it liquidated its inventory of AIMC motorcycles. <u>Scott and Susan Meyers were the victims chosen to fund Textron's exit.</u>

<u>Id.</u> at 3, ¶ 7 (emphasis added). And,

> <u>It was fundamental to Textron's plan that it be successful in inducing the Meyers, individually, to lend AIHA more than $2,500,000.00 (the "Meyers Loan") to facilitate AIHA's asset purchase from AIMC. By failing to disclose this information, Textron lured the Meyers into the AIHA acquisition.</u>

> 11. <u>Further, Meyers only agreed to make the Meyers Loan after Textron made certain promises to them including, but not limited to, a five year funding commitment</u> . . . .

<u>Id.</u> at 4-5, ¶¶ 10-11 (emphasis added).

6.  On February 7, 2011, the Meyerses, acting through Cole, filed in the AIHA bankruptcy case a proof of claim claiming a debt owed to the Meyerses by AIHA of $3,742,528.37 for "Money loaned." Textron Ex. 39.

7.   When the Chapter 7 trustee of the AIHA bankruptcy case filed in the bankruptcy case and in the adversary proceeding a motion for an order approving a compromise and settlement of all claims and causes of action being asserted between AIHA and Textron, the Meyerses, acting through Cole, filed on March 25, 2011, an objection to the proposed settlement, alleging as one of the reasons why the settlement should not be approved that "[a]ll of [AIHA's claims against Textron] arise out of the facts surrounding Textron's inducement of AIHA and the Meyers to agree to purchase assets of American IronHorse Motorcycle Company . . . ."  Textron Ex. 43 at 3, ¶ 7.  Other allegations in the objection make clear that the Meyerses and Cole were taking the position that AIHA and the Meyerses, and no one else, were the ones who suffered financial losses by reason of what was alleged to be fraudulent inducement on the part of Textron leading to AIHA's acquisition of the AIMC assets. Id. at 4-5, ¶¶ 8-11.

8.    Until the district court dismissed the claims in the petition to intervene with prejudice on October 4, 2011,[2] the Meyerses and Cole persisted in the contention in the amended petition to intervene that was filed in the adversary case on January 24, 2011, even after the reference to that adversary case was withdrawn and the case was placed on the docket of the district court, that the Meyerses loaned the funds to AIHA that were used to purchase the AIMC assets.

9.    In one of the two new lawsuits that the Meyerses, acting through Cole, filed on June 1, 2012, in this district court, the Meyerses, acting through Cole, alleged that:

> Because of their justifiable reliance on Textron and TFC's public filings, <u>the Meyers were fraudulently induced to lend the money that was used to purchase the AIMC assets</u> and to support their wholly owned company, AIH Acquisitions, LLC ("AIHA") to enter into a lending relationship with TFC. Ultimately, the acquisition, the lending relationship and the business would fail because of facts and circumstances already known by the Defendants at the time the Meyers entered the scene. Because of the actions of Textron, TFC and E&Y, the Meyers have suffered actual financial losses exceeding well over $10 million.

Textron Ex. 56 at 2-3, ¶ 3 (emphasis added).

---

[2] The dismissal was in Case No. 4:11-CV-624-A, styled "Scott Meyers and Susan Meyers, Plaintiffs, v. Textron Financial Corp., Defendant."

So far as the court can determine, the complaint in the 353 Lawsuit was the first and only time the Meyerses and Cole asserted in any court that Rocky Mountain funded Textron's exit from its financial arrangement with AIMC. Moreover, Rocky Mountain did not file a proof of claim in the AIHA bankruptcy case.

The court can infer, and finds, that if Rocky Mountain had provided the funds for the purchase by AIHA of the AIMC assets in 2008, the Meyerses would have known that to be the fact when the funds were provided. Cole had knowledge that Rocky Mountain was not the lender as she was making her repeated representations in the bankruptcy court proceedings that the Meyerses, personally, were the ones who made the loan. Neither the Meyerses nor Cole had anything to gain by falsely representing to the bankruptcy court, or to this court pre-June 1, 2012, that the Meyerses, personally, were the ones who provided the funds to AIHA for the purchase of AIMC assets. Thus, the court can infer, and finds, that the Meyerses personally provided the funds for the purchase, and that they and Cole knew that they did so when Cole falsely alleged in the 353 Lawsuit complaint that the funds used to complete the acquisition of AIMC were paid directly by Rocky Mountain and that Rocky Mountain ultimately funded Textron's exit.

Mr. Meyers is a certified public accountant and a sophisticated businessman with significant knowledge of financial matters. He and his wife both appear to be well-educated and very knowledgeable about their business activities. There is no reason to think that they did not have ready access to the pertinent financial records. The thought that the Meyerses at the time of the purchase transaction, or at any time thereafter, could be mistaken as to the identity of the lender of the funds used by AIHA to purchase the AIMC assets is incredible. The mere assertion of ignorance by the Meyerses on that subject is tantamount to an attempt by the Meyerses and Cole to perpetrate a fraud on the court as well as on Textron.

The court infers, and finds, that Cole would not have repeatedly taken the position in the bankruptcy court proceedings that the Meyerses personally were the lender unless she had satisfied herself of that fact from her conversations with the Meyerses and documentation provided to her by the Meyerses. Cole undoubtedly knew from her experience as a bankruptcy attorney that the filing of a false proof of claim could have serious consequences for her as well as the Meyerses. Cole repeatedly was in contact with the Meyerses, sometimes on a daily basis, during the period of time when she was making on behalf of the Meyerses the representations in the bankruptcy court, and then to

this court, that the Meyerses, personally, were the lender.  The
court is satisfied, and finds, that Cole would not have filed in
the AIHA bankruptcy case, on February 7, 2011, a proof of claim
on behalf of the Meyerses claiming a debt owed to the Meyerses by
AIHA of $3,742,528.37 for "Money loaned," Textron Ex. 39, if she
had not satisfied herself that the Meyerses had loaned the money.

Of pertinence, not only was Cole deeply involved in the
representation of the Meyerses and AIHA after AIHA filed its case
in bankruptcy court, but also, before that she was significantly
involved in the representation of AIMC.  While with the Beirne,
Maynard & Parsons, LLP law firm (the "Beirne law firm"), Cole
represented AIMC in its involuntary bankruptcy case.[3]  She was a
signatory attorney on the debtor's Consent and Request for Entry
of Order for Relief filed on behalf of AIMC less than a month
after the involuntary petition had been filed, Textron Ex. 3 at
2; and, she was the signatory on many, if not most, of the
documents that were thereafter filed on behalf of AIMC.  Docket
entries in Case No. 08-40926 indicate that Cole was the attorney
providing representation to AIMC at the point in time when the

_____

[3]The AIMC involuntary bankruptcy case was filed February 29, 2008, as Case No. 08-40926 on
the docket of the United States Bankruptcy Court for the Northern District of Texas, Fort Worth
Division.  Textron Ex. 2.

Meyerses negotiated for the purchase of, and purchased, the assets of AIMC.

The court has considered the factors listed by the Fifth Circuit in Thomas v. Capital Sec. Servs., Inc., 836 F.2d 866, 875 (5th Cir. 1988), to the extent applicable to Textron's motion. For the most part, those factors do not apply here because they assume that if the attorney has made a misrepresentation of fact it was not an intentional misrepresentation, but one that possibly was made because of inadequate time for investigation, reliance by the attorney upon his client for factual support, the feasability of a pre-filing investigation, etc. Id.

The documents Mr. Meyers and Cole said they relied upon to convince them that Rocky Mountain was the lender of the acquisition money obviously were items dredged up by the Meyerses to serve as after-the-fact false excuses for the untrue allegations Cole intentionally made in the 353 Lawsuit pleading. One of the items they tendered as a supporting document was their Exhibit No. 17, which appears to be nothing more than a collection of bits and pieces of documents that have no relevance to the identity of the lender involved in AIHA's acquisition of

the AIMC assets.  The first page of that exhibit appears to be
the first page of a floor plan agreement between Rocky Mountain
and Textron pursuant to which Rocky Mountain was receiving floor
plan financing from Textron at some unidentified point in time.
The other (which starts at the ninth page of Exhibit 14 of the
Meyerses and Cole) appears to be a document signed by someone on
behalf of Rocky Mountain that was prepared for signature of other
entities, including Textron.  It does not show that it was signed
on behalf of the other entities.  The document indicates that at
some point in time someone had in mind that Rocky Mountain, as
well as AIHA and one or more of their affiliates, would "prepare
and negotiate a definitive asset purchase agreement concerning
certain assets of [AIMC]."  Meyerses and Cole Ex. 14 at ninth
page.  The document goes on to say that there is an express
understanding that "no binding commitment of any kind with
respect to a purchase transaction will arise unless and until
Buyer and Seller enter into a mutually acceptable definitive
asset purchase agreement . . . ."  Id.  No testimony was offered
to suggest to the court that the document has any relevance to
the identity of the lender who provided the funds for the
purchase by AIHA of the AIMC assets.  Rather, the undisputed fact
is that final asset purchase and loan and security agreements
were reached, and that there is no indication in either of them

that Rocky Mountain played any role in the funding of the asset purchase. Textron Exs. 66 and 67.

Surely there would have been more reliable documentation that Rocky Mountain was the lender, and surely the Meyerses would have had access to the documentation, if Rocky Mountain had, in fact, been the lender. If Rocky Mountain had been the lender of $2,500,000 for the asset purchase, there certainly would have been bank records and other financial records that would have been available to establish that fact. The absence of production of any such record is telling.

The court finds that the Meyerses and Cole all knew that Cole was making false allegations in the 353 Lawsuit complaint when Cole alleged that Rocky Mountain was the lender.

Thomas instructs that Rule 11 compliance is measured by an objective, not subjective, standard of reasonableness under the circumstances. 836 F.2d at 873. When a standard of objective reasonableness under the circumstances is applied to the conduct of Cole in the signing and filing, and prosecution of, the 353 Lawsuit complaint, her conduct would not satisfy that standard because no reasonable attorney, whatever standard of reasonableness is used, would have made the knowingly false allegations Cole made in the 353 Lawsuit complaint.

After having considered all the factors appropriate to be considered, the court finds, and concludes, that Cole violated Rule 11(b)(3) when she signed, filed, and later advocated the complaint by which the 353 Lawsuit was initiated.   She knew from the beginning that the complaint contained false allegations relative to the identity of the lender who provided the funding for the acquisition of the assets of AIMC.   For that reason, the court is imposing sanctions on Cole for her violation of the deemed certification requirement of Rule 11(b)(3).

Rule 11(c)(1) authorizes the court to impose sanctions on Cole, as the violating attorney, and on the Meyerses, as parties responsible for the violation.   The record is clear, and the court finds, that the Meyerses joined Cole in the decision to make the false allegations in the 353 Lawsuit complaint and that they were made with the encouragement of the Meyerses.

The Meyerses are the clients who caused, and authorized, Cole to file and prosecute the 353 Lawsuit.   A client is responsible for the violation of Rule 11 if the client "know[s] that the filing and signing [of a pleading, motion, or other paper] is wrongful."   Calloway v. Marvel Entm't Grp., a Div. of Cadence Indus. Corp., 854 F.2d 1452, 1475 (2d Cir. 1988) rev'd in part sub nom Pavelic & LeFlore v. Marvel Entm't Grp., 493 U.S. 120 (1989).   Inasmuch as the filing and prosecution of the 353

Lawsuit was part of a "coordinated effort" of the Meyerses and

Cole, "joint and several liability is entirely appropriate."

Estate of Calloway v. Marvel Entm't Grp., a Div. of Cadence

Indus. Corp., 9 F.3d 237, 239-40 (2d Cir. 1993).  The Fifth

Circuit has approved, indeed ordered, a joint and several award

of attorneys' fees under Rule 11 against the client and the

attorney.  Jennings v. Joshua Indep. Sch. Dist., 948 F.2d 194,

196, 199 (5th Cir. 1991).

Rule 11(c)(1) is specific that an appropriate sanction may

be imposed on a party who "is responsible for the [Rule 11]

violation."  The Fifth Circuit used language in Independent Fire

Insurance Co. v. Lea, indicating that Rule 11 sanctions can be

levied against "a party who ha[s] some direct personal

involvement in the management of the litigation and/or the

decisions that resulted in the actions which the court finds

improper under Rule 11."  979 F.2d 377, 379 (5th Cir. 1992).

Both the Meyerses and Cole were responsible for continuing

to advocate the false allegations even after they should have

known the game was over when they received the letter/notice from

Textron's attorney in early August 2012 putting them on notice of

the following:

> As you are well aware, Judge John McBryde of the
> United States District Court for the Northern District
> of Texas, Fort Worth Division, entered his Memorandum

Opinion and Order on October 4, 2011 affirming that all
claims and causes of action asserted by Scott and Susan
Meyers in their First Amended Petition in Intervention
against Textron Financial were dismissed with
prejudice.  See Motion, at Exhibit A.  Despite this
dismissal with prejudice, on June 1, 2012, you and the
Meyers filed the RMC complaint -- a repackaged version
of the First Amended Petition in Intervention --
asserting the same allegations and causes of action
against Textron Financial.

The only substantive difference between the
Meyers' First Amended Petition in Intervention, which
Judge McBryde dismissed with prejudice, and the RMC
Complaint is that the term "the Meyers" has been
replaced with Rocky Mountain Choppers, LLC or "RMC."
Based on your years of prior participation in the
bankruptcy and litigation proceedings, you and the
Meyers are aware that replacing "the Meyers" with "RMC"
-- a shell entity wholly owned and controlled by the
Meyers -- results in deliberate factual
misrepresentations in clear violation of Rule 11.  In
addition to Mr. Meyers' sworn testimony that RMC was
inactive during the Meyers involvement with AIH and
Textron Financial, you and the Meyers also specifically
represented to the bankruptcy court that RMC was not a
claimholder and that the Meyers personally held all
claims relating to AIH Acquisition, LLC.

Textron Ex. 59.

The court has taken into consideration that Cole, along with

the Meyerses, totally disregarded this warning by Textron's

counsel.  Instead, they continued to advocate the false 353

Lawsuit pleading through the district court until the lawsuit was

dismissed with prejudice and then through the Fifth Circuit until

that dismissal was affirmed.

2.   **The Violation by Cole of Her Deemed Certification that the Claims and Legal Contentions Were Warranted by Existing Law**

Equally apparent is that Cole violated her Rule 11(b)(2) deemed certification (by her conduct in signing, filing, and later advocating the claims against Textron in the name of Rocky Mountain in the 353 Lawsuit) that the claims against Textron were warranted by existing law. Any practicing attorney, even one with a minimum level of competence, would know that, once the lawsuit by the Meyerses against Textron based on their loaning of money for the purchase by AIHA of the assets of AIMC was dismissed with prejudice, the Meyerses were prohibited by the doctrine of <u>res judicata</u> from filing the 353 Lawsuit against Textron based on the same claims, using the second time, instead of the Meyerses, as the name of the plaintiff a shell entity wholly owned and controlled by the Meyerses.

The Meyerses and Cole have failed to make any rational argument in support of a right to file and pursue another lawsuit against Textron based on the same facts that had been alleged in a lawsuit that had been dismissed with prejudice a few months earlier simply by substituting the name of Rocky Mountain for the Meyerses as the plaintiff.

When all factors appropriate to be considered are taken into account, the court finds, and concludes, that Cole is subject to

23

sanctions for her violation of the deemed certification of Rule 11(b)(2) that the claims asserted in the 353 Lawsuit were warranted by existing law. Because of the limitation imposed by Rule 11(c)(5)(A), the court is not using Cole's violation of Rule 11(b)(2) as a basis for imposition of monetary sanctions against the Meyerses.

3. **The Violation by Cole of Her Deemed Certification that the 353 Lawsuit was Not for an Improper Purpose**

The third deemed certification made by Cole when she signed, filed, and later advocated the claims asserted by the Meyerses, in the name of Rocky Mountain, in the 353 Lawsuit was that the pleading was "not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1). There can be no doubt, and the court finds, that the purpose of Cole in signing, submitting, and later advocating the claims alleged in the name of Rocky Mountain in the 353 Lawsuit was a part of an ongoing scheme or plan between the Meyerses and Cole to harass Textron and needlessly increase the costs of Textron's defense of the repeated court actions brought against them by the Meyerses, acting through Cole.

The extent to which Textron was being harassed by the Meyerses, and made by the Meyerses, with the cooperation of Cole,

to bear tremendous legal expenses is emphasized by several facts established in the record.  According to counsel for Textron, Textron's legal expenses in defending against claims brought by the Meyerses, in one name or another, before the 353 Lawsuit was filed in June 2012, was in excess of $1,000,000.  Included in those legal actions initiated by the Meyerses, through Cole, against Textron before June 1, 2012, are those listed in a preceding part of this memorandum opinion and order.  Supra at 7-11.  Shortly after the complaint against Textron initiating an adversary proceeding in AIHA's bankruptcy was filed on August 7, 2009, Textron Ex. 7, the Meyerses, on August 17, 2009, sent a letter to American IronHorse dealers that said in its first sentence:  "Susan and I are continuing our litigation against Textron for torturous [sic] interference with our business and fraud."  Adversary No. 09-04299, Doc. 1 at 4.

So intent were the Meyerses, more often than not acting through Cole, to pursue litigation of one kind or another, under one name or another, against Textron that they agreed personally to finance all that litigation, including the bankruptcy litigation brought in AIHA's name.  In the request and application for payment of administrative claim the Meyerses, through Cole, filed in the AIHA bankruptcy case on July 11, 2011, the Meyerses confirmed that they were paying all of the fees and

expenses that the Beirne law firm had incurred in relation to litigation against Textron.   Textron Ex. 49 at 2, ¶¶ 2-3.   The intent of the Meyerses was further demonstrated by their opposition to a motion filed on March 4, 2011, by Textron and the Chapter 7 Trustee of the AIHA bankruptcy estate that contemplated that Textron was to pay $765,000.00 in settlement of the AIHA claims, which included the fraudulent inducement claims that the Meyerses had been pursuing in AIHA's name.   Textron Exs. 40; 43.

The opposition of the Meyerses to the proposed compromise and settlement between Textron and the Chapter 7 Trustee was expressed in a document filed by the Meyerses on March 25, 2011, over the signature of Cole.   Textron Ex. 43.   The Meyerses alleged that "[a]ll of [the claims proposed to be settled] arise out of the facts surrounding Textron's inducement of AIHA and the Meyers to agree to purchase assets of American IronHorse Motorcycle Company . . . ."   Id. at 3, ¶ 7.

When the bankruptcy court approved the compromise and settlement, it issued an order on July 15, 2011, by which all of the claims made by AIHA against Textron in adversary proceedings in the AIHA bankruptcy case were dismissed with prejudice.   Textron Ex. 50 at 2, ¶ 1.   Even though this dismissal should have finally and forever ended the litigation by the Meyerses against Textron arising from any representations made by Textron to

induce the purchase by AIHA of the assets of AIMC or the funding
of that purchase,[4] the Meyerses and Cole were not dissuaded--they
plowed forward with their litigation against Textron based on the
same facts that had been subject to the litigation that was
dismissed by the bankruptcy court with prejudice on July 15,
2011.

At one point in the bankruptcy proceedings, on July 11,
2011, the Meyerses, acting through Cole, sought a recovery from
the AIHA bankruptcy estate of $475,325.32, representing fees and
expenses incurred by the Meyerses through the Beirne law firm in
the pursuit of litigation against Textron.   Textron Ex. 49 at 2,
¶¶ 2-3.   The application disclosed that the Beirne law firm was
employed to represent AIHA in pursuit of the litigation against
Textron under a funding agreement approved by the bankruptcy
court that required the Meyerses to pay the fees and expenses of
the Beirne law firm related to the litigation.   Id. at 2, ¶ 2.

The administrative claim was limited to expenses incurred
through the Beirne law firm, and it did not take into account the
expenses incurred by the Meyerses in their ongoing pursuit of
litigation by Textron after Cole left the Beirne law firm and

---

[4]AIHA and the Meyerses, AIHA's owners, were in privity.  The dismissal of AIHA's claims
against Textron with prejudice should have prevented assertion of any other fraud claims against Textron
by the Meyerses or any other entity owned and controlled by the Meyerses.

assumed representation of the Meyerses as a sole practitioner.
In June 2010, the Meyerses, acting through Cole, filed a motion
and notice of withdrawal and substitution of counsel, informing
the bankruptcy court that the Beirne law firm was no longer
representing the Meyerses and that, from that point forward,
Cole, individually, through her own law firm, would be
representing the Meyerses in their litigation against Textron.
Textron Ex. 15.   The Meyerses, through Cole, alleged in that
application that Cole, during her employment with the Beirne law
firm, represented the Meyerses.   Id. at third unnumbered page,
¶ 11.[5]   At pages 7-11 of this opinion, the court has made
reference to many of the legal actions taken by the Meyerses,
acting through Cole for the most part, against Textron before the
353 Lawsuit complaint was filed.   At pages 5-18 of an order the
court issued in this miscellaneous action on January 16, 2014,
the court made mention of other litigation initiated on behalf of
the Meyerses, some in the name of AIHA, against Textron.   Ct.

---

[5]Because of the violations, by noncompliance, of the Meyerses and Cole of orders directing them
to provide information about work done by Cole in connection with litigation matters in which Textron
was a party that was not included in the $475,325.32 administrative claim, see Jan. 17, 2014 Order (Ct.
Ex. 15) at 2 and Feb. 5, 2014 Order (Ct. Ex. 17) at 4, the court is without information as to the total
amount paid by the Meyerses to Cole to pursue litigation against Textron after she left the Beirne law
firm. The references to Court Exhibits 15 and 17 are to exhibits that became a part of the record of this
action at a March 4, 2014 hearing at which there was extensive development of evidence pertinent to the
violations, by noncompliance, of the Meyerses and Cole of numerous orders issued by the court in this
miscellaneous action.  The court, consistent with discussions had at the March 4 hearing and again at the
April 9-10 hearing, is treating the record of the March 4 hearing as part of the record pertinent to the
sanction matters heard on April 9-10.

Ex. 14. The repeated filing of claims by the Meyerses, in one name or another, against Textron over the years could well exceed the $1,000,000 estimate Mr. Meyers gave when he testified at the April 9-10 hearing as the amount he and his wife have spent in pursuing litigation against Textron.

The court can infer from the evidence, and finds, that the 353 Lawsuit complaint was signed, filed, submitted to the court, and later advocated by Cole was for the purpose of further harassing Textron and needlessly increasing Textron's costs in defending the litigation that the Meyerses, in one name or another, persisted in bringing against Textron notwithstanding rulings adverse to them in earlier litigation. For those reasons, Cole and the Meyerses, who were responsible for Cole's violations, are all subject to Rule 11 sanctions for violation of Rule 11(b)(1).

Testimony given by Mr. Meyers at the April 9-10 hearing indicates that the Meyerses and Cole are not finished with Textron yet, and that a significant sanctions award against the Meyerses and Cole would be helpful in deterring them from again filing frivolous and harassing litigation against Textron.

4.  <u>The Sanctions that are Being Imposed</u>

Rule 11(c)(4) provides that "[a] sanction imposed under [Rule 11] must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated" and that "[t]he sanctions may include . . . an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Evidence received at the April 9-10 hearing establishes that Textron incurred reasonable expenses in the total amount of at least $79,424.21 as a direct result from Cole's Rule 4 violations and that an award in favor of Textron against the Meyerses and Cole, jointly and severally, for recovery of $79,424.21 is a sanction that is limited to what suffices to deter repetition of the sanctioned conduct or comparable conduct by others similarly situated.  The conduct of the Meyerses and Cole of which Textron has complained was not the result of mere inadvertence, negligence, failure to properly investigate, or any such circumstance.  Their conduct in presenting and pursuing the 353 Lawsuit against Textron constituted deliberate and intentional violations of each of the first three prongs of Rule 11(b).

The evidence has persuaded the court that the attorneys' fees of $77,191.20 included in that total is an appropriate amount to be included in the sanctions award.  The attorneys

30

exercised billing judgment in determining the amount to be awarded, and considered all of the pertinent factors in calculating what under Fifth Circuit law constitutes an amount of attorneys' fees that appropriately can be awarded as a sanction.

Therefore, the court is ordering the Meyerses and Cole, jointly and severally, to pay to Textron $79,424.21.

B.    Cole's Conduct is Sanctionable Under 28 U.S.C. § 1927

Textron asserted as an alternative basis for recovery from Cole of the attorneys' fees and litigation expenses it incurred in the defense of the 353 Lawsuit the provisions of 28 U.S.C. § 1927, which reads as follows:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

The Fifth Circuit has concluded that for a motion under § 1927 to be successful, there must be "evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court." See Edwards v. General Motors Corp., 153 F.3d 242, 246 (5th Cir. 1998); see also Ingram v. Glast, Phillips & Murray, 196 F. App'x 232 (5th Cir. 2006).

Although § 1927 speaks of vexatious multiplication of litigation, the section can support an award of attorneys' fees

31

for an entire course of proceedings if the case never should have
been brought in the first place. See Lewis v. Brown & Root,
Inc., 711 F.2d 1287, 1292 (5th Cir. 1983); see also Browning v.
Kramer, 931 F.2d 340, 345 (5th Cir. 1991) (indicating that "when
the entire course of proceedings were unwarranted and should
never have been commenced nor persisted in," the entire financial
burden of an action's defense can be shifted to the plaintiff
under § 1927).

Cole is an attorney admitted to conduct cases in this court.
For reasons previously discussed, the record establishes, and the
court finds, that Cole initiated and prosecuted the 353 Lawsuit
in bad faith, with improper motive, and in reckless disregard of
the duty she owed to the court to avoid, as an officer of the
court, initiation and pursuit of unfounded, frivolous, or
fraudulent litigation. The initiation and prosecution of the 353
Lawsuit was tantamount to a fraud by Cole on the court as well as
on Textron. By initiating and prosecuting that lawsuit, she so
multiplied proceedings against Textron unreasonably and
vexatiously that she should be required to satisfy personally the
district court costs, expenses, and attorneys' fees reasonably
incurred by Textron by reason of such conduct. The court
concludes that § 1927 provides an additional reason why Cole
should be held liable, jointly and severally with the Meyerses,

32

to pay to Textron $79,424.21 as its district court litigation expenses reasonably incurred in the defense of the 353 Lawsuit.

\* \* \* \* \*

Evidence offered by the Meyerses and Cole contradicted some of the findings expressed above in this section II. However, the court questions the credibility of each of them, and finds that none of such findings was contradicted or disputed by any credible evidence.

III.

### The Requests for Sanctions Under
### the Court's Inherent Power

The Supreme Court has recognized that federal courts have the inherent power to impose attorneys' fees as a sanction for bad faith litigation conduct. Chambers, 501 U.S. at 47-48. A sanction pursuant to the court's inherent power should be imposed only if necessary to preserve the authority of the court, and the sanction "must employ 'the least possible power adequate to the end proposed.'" Natural Gas Pipeline Co. of Am. v. Energy Gathering, Inc., 86 F.3d 464, 467 (5th Cir. 1996) (citation omitted); see also Crenshaw v. General Dynamics Corp., 940 F.2d 125, 129 (5th Cir. 1991) (holding that a federal court may award attorneys' fees to a successful litigant when the opponent

commenced or conducted the action in bad faith, vexatiously, or for the purpose of harassment, but the court must make specific findings as to the frivolousness of the suit before making such an award). In Roadway Express, Inc. v. Piper, 447 U.S. 752, 765 (1980), the Supreme Court recognized that, in the narrowly defined circumstances when exercise of the court's inherent power is appropriate, "federal courts have inherent power to assess attorney's fees against counsel." The language of Roadway Express was quoted with approval by the Supreme Court in Chambers, 501 U.S. at 45.

Were the court not able to impose on the Meyerses and Cole as sanctions under Rule 11 and § 1927 the reasonable litigation expenses incurred by Textron in the district court defense of the 353 Lawsuit, an award against the Meyerses and Cole pursuant to the court's inherent power would be appropriate. For reasons discussed above, there is no doubt that the 353 lawsuit was frivolous and constituted bad faith litigation. If there were not another means of causing the Meyerses and Cole to reimburse Textron for the cost of the district court defense of that lawsuit, the court would exercise its inherent power to impose a payment obligation of those expenses to Textron under the court's inherent power. The 353 Lawsuit was brought and prosecuted by

the Meyerses and Cole against Textron in bad faith, vexatiously, and for the purpose of harassment.

IV.

Sanctions Issues that are Still Being
Considered by the Court

The question as to whether the litigation expenses incurred by Textron in this miscellaneous action since late 2013 should be awarded against the Meyerses and Cole under the court's inherent power is an open one that the court has under consideration for a future ruling once the court has reviewed and considered post-hearing filings by the parties on that subject.

At the same time the court will be further evaluating what, if any, sanctions to impose on the Meyerses and Cole for their violations, by noncompliance, with this court's orders in this miscellaneous action, starting with an October 31, 2013 order and continuing repeatedly through a March 21, 2014 order. The orders that have been violated by noncompliance are listed in Court Exhibit 42 (one of the exhibits identified and received at the April 9-10 hearing).[6]

---

[6]The court exhibit number shown in the record references in paragraphs 1 through 9 of Court Exhibit 42 are to exhibits that were identified and made a part of the court record at the March 4 hearing. The exhibit numbers shown in the record references for items 10 and 11 on Court Exhibit 42 are to exhibits identified and made a part of the record at the April 9-10 hearing.

The reasons given by the Meyerses and Cole for noncompliance with those orders were explored thoroughly at the March 4, 2014 hearing in this miscellaneous action. By an order issued in this action on March 6, 2014, the court confirmed findings and conclusions the court reached from evidence received at the March 4 hearing that had been expressed on the record at the conclusion of the hearing. Tr. of Mar. 4, 2014 Hr'g at 157-158; Mar. 6, 2014 Order at 3-5. The court found, and concluded, that the excuses given by the Meyerses and Cole for violations by noncompliance with the court's orders were false and that the mere assertion of those excuses constituted an attempt to defraud the court. The court, therefore, is evaluating what, if any, sanctions should be imposed for those violations.

V.

## Order

For the reasons stated above,

The court ORDERS that Textron have and recover from the Meyerses and Cole, jointly and severally, $79,424.21 as reasonable litigation expenses, including attorneys' fees, incurred by Textron in the district court defense of the 353 Lawsuit.

SIGNED April 16, 2014.

_____

JOHN McBRYDE
United States District Judge