U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

MAY - 9 2014

CLERK, U.S. DISTRICT COURT
By _____
             Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

IN RE MOTION FOR SANCTIONS      §
AGAINST SCOTT MEYERS, SUSAN     §   NO. 4:12-MC-015-A
MEYERS, AND CYNTHIA COLE        §

MEMORANDUM OPINION
and
ORDER

This memorandum opinion and order supplements the discussions, findings, conclusions, and orders contained in the Memorandum Opinion and Order signed in the above-captioned action on April 16, 2014 ("April 16 Opinion").  The court has concluded that, in addition to the sanctions ordered by the April 16 Opinion, the Meyerses and Cole should, jointly and severally, be required to pay to Textron $83,693.87 as a sanction pursuant to the inherent power of the court to address the bad faith litigation conduct of the Meyerses and Cole in relation to this miscellaneous action during the November 2013 through February 2014 time period.

The abbreviated references used in the April 16 Opinion are carried forward and used in this memorandum opinion and order.

I.

<u>History and Background of Textron's Sanctions Requests,
and Previous Sanctions Rulings</u>

The history and background of the sanctions requests made by
Textron that were severed and consolidated into the above-
captioned miscellaneous action and supplemented by Textron on
November 19, 2013, are set forth in section I, on pages 2-5, of
the April 16 Opinion.  Sanctions rulings previously made by the
court in this action are described on pages 1 and 2 and 30-33 of
the April 16 Opinion.  Those rulings are being supplemented and
corrected by an order signed on the date of the signing of this
Memorandum Opinion and Order.  Unresolved issues that as of April
16 remained for future rulings are described on pages 2 and 35-36
of the April 16 Opinion.  All of those parts of the April 16
Opinion, as supplemented and corrected, are adopted by reference
in this opinion.

On April 17, 2014, Textron made a filing in the form of a
memorandum requesting an additional sanction, based on the
court's inherent power, in the form of an award against the
Meyerses and Cole in an amount equal to the litigation expenses
Textron incurred in this miscellaneous action.

On April 24, 2014, the Meyerses and Cole, acting through
Cole, filed their response in which they took the positions that
(1) Textron's law firm should be required to supplement its fee

numbers for further review by the Meyerses and Cole and for consideration by the court because of a belief by the Meyerses and Cole that Textron did not properly reflect in its fee calculations a discount Textron's lawyers said they gave to Textron, (2) whatever sanction award might be made should be against Rocky Mountain rather than the Meyerses, (3) the court does not need to utilize its inherent power because Rule 11 and § 1927 provide an adequate remedy, (4) Textron's request for injunctive relief is not appropriate under the circumstances.

On April 30, 2014, Textron, pursuant to an order of the court, replied to the issues raised by the Meyerses and Cole concerning Textron's fee calculations, disclosing that Textron performed recalculations of the amount the court should have awarded as attorneys' fees in the April 16 Opinion for the district court defense of the 353 Lawsuit and the amount Textron is now seeking to recover pursuant to the court's inherent power.

II.

### Factors Pertinent to Both the Civil Contempt Issues and Textron's Request for Additional Sanctions

The sanctions award made in the April 16 Opinion was limited to the litigation expenses incurred by Textron in the district court defense of the 353 Lawsuit.  The court is now concerned with the possibility of a compensatory civil contempt sanction

3

because of noncompliance with orders of the court and a sanction in favor of Textron related to the additional litigation expenses it incurred in connection with the above miscellaneous action from November 2013 through February 2014.

Evidence received at a hearing held March 4, 2014, dealt primarily with violations by the Meyerses and Cole of orders issued by the court in this miscellaneous action, and the reason given by them for violating the orders.  A listing of those orders and the excuse given by the Meyerses and Cole for violating them are set forth in the immediately following subsection of this opinion.  The March 4 hearing evidence was directly related to the civil contempt issues, and was indirectly related to Textron's request for an additional sanction.  Under this section of the opinion, the court, after listing the orders that were violated and the excuse given by the Meyerses and Cole, describes the events that led to the March 4 hearing, then provides an analysis of the evidence received at the hearing, and concludes with a statement of additional findings and conclusions.

A.   The Orders That the Meyerses and Cole Violated and the Excuse Given for the Violations

1.   The Orders

The orders issued in this action that the Meyerses and Cole violated by noncompliance are listed below in chronological sequence:

1st.  October 31, 2013 Order:

The court further ORDERS that:

(1)  By December 10, 2013, Textron, the Meyerses, and Cole have a face-to-face meeting in the Dallas office of counsel for Textron for the purpose of discussing, and making a good faith effort to resolve by agreement, the issues presented by Textron's request for sanctions;

(2)  If any of the persons against whom sanctions are sought are represented by counsel on the sanctions issues, each such counsel shall be a participant in the face-to-face meeting ordered above.

Oct. 31, 2013 Order (Ct. Ex. 6) at 6.

2nd.  December 23, 2013 Order:

The court ORDERS that by January 6, 2014, the Meyerses and Cole show cause by appropriate written filing why they should not be sanctioned for failure to comply with the court's [October 31, 2013] order.

Dec. 23, 2013 Order (Ct. Ex. 9) at 1-2.

3rd.  December 23, 2013 Order:

The court further ORDERS that a hearing be set for 2:00 p.m. on January 9, 2014, before the undersigned in the Fourth Floor Courtroom of the

5

United States Courthouse, Fort Worth, Texas, at which time, date, and place the Meyerses, Cole, and counsel for Textron are to be present to show cause why the Meyerses and Cole should not be sanctioned for failure to comply with the court's [October 31, 2013] order.

Dec. 23, 2013 Order (Ct. Ex. 9) at 2.

4th. December 23, 2013 Order:

The court ORDERS that each party file by 2:00 p.m. on January 3, 2014, a document providing to the court all available legal authorities bearing on the subject of whether the Meyers can be held accountable under Rule 11 or the court's inherent power for attorney's fees incurred by Textron in the defense of Case No. 4:12-CV-353, bearing in mind that neither of the Meyers was a named party to that action, including in such document all authorities that bear on that subject, all arguments the filing party has in support of his, her, or its position on that subject, and a recitation, with appropriate record references, of all evidence supporting such party's position on that subject.

Dec. 23, 2013 Order (Ct. Ex. 10) at 2.

5th. December 23, 2013 Order[1]:

The court further ORDERS that by 2:00 p.m. on January 3, 2014, the Meyers and Cole file a document informing the court (1) whether either or both of the Meyers plan to contend that he or she should not be liable for all or some part of the

---

[1] The requirement that the Meyerses and Cole file the information called for by the No. 5 order was to assist the court in evaluating what, if any, discovery might appropriately be conducted in this sanctions proceeding. Textron had informed the court by its November 19, 2013 filing that it did not intend to conduct discovery unless "either or both of the Meyers attempt to avoid their culpability by claiming that they relied upon the legal advice of Ms. Cole when deciding to file the RMC Complaint, or Ms. Cole claims that she made a reasonable inquiry into the facts or the law prior to filing the RMC Complaint." Case No. 4:12-MC-015-A, Doc. 16 at 18, ¶ 8. Neither the Meyerses nor Cole provided the information that was needed to determine whether discovery would be appropriate.

attorneys' fees, expenses, and costs Textron seeks
to recover on the theory that he or she relied
upon the legal advice of Cole when deciding to
file the complaint in Case No. 4:12-CV-353 and (2)
whether Cole plans to contend that she made a
reasonable inquiry into the facts or law prior to
filing such complaint; and the court further
ORDERS that if an affirmative response is made to
either of the subjects mentioned in the preceding
part of this sentence, Textron file by 2:00 p.m.
on  January 9, 2014, an indication of the nature
and scope of discovery it might wish to conduct on
those subjects.

Dec. 23, 2013 Order (Ct. Ex. 10) at 2-3.

6th. January 17, 2014 Order:

The court ORDERS that by 2:00 p.m. on
January 27, 2014, Cole and the Meyerses file a
document in Case No. 4:12-MC-015-A that provides
an itemization of all the fees and expenses
included in such $475,325.32 [administrative claim
in bankruptcy case], including, but not limited
to, an itemization showing work done, date work
done, identity of the attorney who did the work,
and per-hour rate of all attorney work included in
the total amount of $475,325.32.

Jan. 17, 2014 Order (Ct. Ex. 15) at 1.

7th. January 17, 2014 Order[2]:

The court ORDERS that by 2:00 p.m. on
January 27, 2014, Cole and the Meyerses file a

---

[2]The two orders, Nos. 6 and 7, concerning identities of attorneys who did certain work in the
bankruptcy cases were pertinent to Cole's contention that she had a minor role as an attorney in matters
related to the bankruptcy cases.  See Ct. Ex. 14 at 2 (quoting from a response Cole filed in this
miscellaneous action on Dec. 3, 2013).  The court thought gaining this information important enough to
again order, by the 8th and 9th orders, that the information be provided in advance of the hearing that
was scheduled to be held on March 4, 2014.  Because of the failure of the Meyerses and Cole to provide
any response to any of those orders, the court did not gain the requested information.  However, the court
obtained sufficient information from other sources to enable the court to find that Cole was deeply
involved in all of the litigation matters pertinent to Textron's requests for sanctions.

document in Case No. 4:12-MC-015-A that provides
information about all work done by Cole in
connection with litigation matters in which
Textron was a party that is not included in the
$475,325.32 total mentioned above, which document
shall show each date on which the work was done,
the nature of the work done on each such date, the
per-hour rate charged for the work, and the
identity of the person or persons or entity who
paid for the work.

Jan. 17, 2014 Order (Ct. Ex. 15) at 2.

8th. February 5, 2014 Order:

The court further ORDERS that by 2:00 p.m. on
February 28, 2014, Cole and the Meyerses file a
document in Case No. 4:12-MC-015-A that provides
an itemization of all the fees and expenses
included in the $475,325.32 total mentioned in the
Written Request and Application for Payment of
Administrative Claim filed by Cole for the
Meyerses in Bankruptcy Case No. 09-42480 on
July 11, 2011 (Doc. 191), including, but not
limited to, an itemization showing work done, date
work done, identity of the attorney who did the
work, and per-hour rate of all attorney work
included in the total amount of $475,325.32.

Feb. 5, 2014 Order (Ct. Ex. 17) at 3.

9th. February 5, 2014 Order:

The court further ORDERS that by 2:00 p.m. on
February 28, 2014, Cole and the Meyerses file a
document in Case No. 4:12-MC-015-A that provides
information about all work done by Cole in
connection with litigation matters in which
Textron was a party that is not included in the
$475,325.32 total mentioned above, which document
shall show each date on which the work was done,
the nature of the work done on each such date, the
per-hour rate charged for the work, and the

identity of the person or persons or entity who
paid for the work.

Feb. 5, 2014 Order (Ct. Ex. 17) at 4.

10th. March 4, 2014 Order[3]:

The court ORDERS that by 2:00 p.m. on
March 18, 2014, Cole and the Meyerses file
documents in the above-captioned action providing
the information, as required by various orders
issued in such action, in the form contemplated by
the orders, and that a separate document be filed
as to each order the court has issued in such
action containing the information requested by
that order.

Mar. 4, 2014 Order (Ct. Ex. 40).

11th. March 21, 2014 Order[4]:

The court further ORDERS that by 2:00 p.m. on
March 27, 2014, Cynthia Cole file with the papers
in the above-captioned miscellaneous action a
document bearing the caption of such action by
which she verifies by an affidavit signed by her
under her oath that she has provided to Scott
Meyers and Susan Meyers a copy of each of the
orders the court has signed in the above-captioned
miscellaneous action and the court further ORDERS
that she include in her affidavit a statement as
to the method by which she provided those copies
to Scott Meyers and Susan Meyers and the date on

---

[3]The March 4, 2014 order was issued because Cole requested of the court at the March 4, 2014 hearing an opportunity to provide the information the Meyerses and Cole had failed to provide in response to orders of the court. Tr. of Mar. 4 Hr'g at 63-65. Even though given that opportunity by the March 4 order, the Meyerses and Cole failed to respond.

[4]The 11th order was issued because the court was told during a telephone conference conducted on March 21, 2014, with the Meyerses, Cole, and counsel for Textron on the line, that Cole had failed to provide her clients, the Meyerses, a copy of a very important March 6, 2014 order. The court wanted documentation on the subject of whether Cole was providing her clients copies of orders issued in this miscellaneous action. See Case No. 4:12-MC-015-A, Doc. 56 at 3. As before, Cole did nothing in response to the order.

> which she took whatever action she took to cause
> such copies to be provided to Scott Meyers and
> Susan Meyers.

Mar. 21, 2014 Order (Ct. Ex. 41) at 3-4.

With the exception of the 1st order, the Meyerses and Cole simply disregarded all eleven orders.  They provided no response to any of them, nor did they seek relief from the requirements of any of the orders.

As to the 1st order, Cole, acting on behalf of the Meyerses, filed a motion on December 10, 2013, seeking a postponement of the face-to-face meeting the order required the parties to hold on December 10, which motion was stricken from the records of this action because it did not comply with a Local Rule requiring that any motion of that kind be accompanied by a certificate of conference.  After the motion was stricken, there was no follow-up by the Meyerses or Cole as to the requirements of the 1st order.

The Meyerses and Cole did not appear at the hearing scheduled by the 3rd order for January 9, 2014.  Counsel for Textron did appear.  The morning of January 9, Cole filed a document titled "Suggestion of Bankruptcy," informing the court that she had filed a personal bankruptcy proceeding in the Dallas

Division of this court[5] and that, according to her, "all hearings and other activity related [to this miscellaneous action] have been stayed by the operation of Title 11 U.S.C. § 362." Case No. 4:12-MC-015-A, Doc. 28. Even after Cole was informed that the filing of her bankruptcy case did not prevent this court from proceeding in the sanctions matters,[6] see Ct. Ex. 13 at 3-4, there still was no compliance with any of the above-listed orders that had been issued up to that date, either by Cole personally or by the Meyerses, who were being represented by Cole.

As of this date, there has been no compliance by the Meyerses or Cole with any of the eleven orders listed above, even those that Cole does not claim she did not receive.

2.   The Excuse

On February 4, 2014, the court issued an order directing Cole, personally, and the Meyerses, personally and through their attorney Cole, and Textron, through its attorneys, to appear before the court for a hearing at 10:00 a.m. on March 4, 2014, on Textron's requests for sanctions. The next day, on February 5, 2014, the court issued an order directing that Cole, personally, and the Meyerses, personally and through their attorney Cole,

_____

[5]Cole filed her Chapter 7 voluntary petition in the Dallas Division the morning of January 9, 2014. Ct. Ex. 28 at first page.

[6]After the January 9, 2014 hearing date had passed, Cole allowed her bankruptcy case to be dismissed on January 24, 2014. Ct. Ex. 28, last three pages.

appear before the court at 10:00 a.m. on March 4, 2014, for the
purpose of showing cause why they should not be sanctioned for
their failures to comply with orders of the court.  As of that
date, there had been five violations by the Meyerses and Cole,
personally and as attorney of record for the Meyerses, of the
court's orders.

The day before the hearing was scheduled to be conducted on
March 4, Cole, acting through an attorney by the name of Lauren
N. Pierce ("Pierce"), and the Meyerses, acting through Cole,
filed motions for continuance of the March 4 hearing.[7]  For the
first time the Meyerses and Cole disclosed, by means of an
affidavit of Cole that accompanied each of the motions for
continuance, their intent to take the position that their
noncompliance with the first nine of the orders listed above was
because Cole did not receive notice of orders due to the failure
of the court clerk's office to send notifications of orders to
the e-mail address Cole claimed she provided to the clerk's
office in a change of contact information form she said she
mailed to the clerk's office on October 11, 2013, and another she

---

[7]A version of the motion for continuance, with the affidavit attached, that did not comply with
the court's filing requirements was filed on February 28, 2014. Case No. 4:12-MC-015-A, Docs. 37, 40.

12

said she mailed on January 2, 2014.[8]  See Case No. 4:12-MC-015-A,
Docs. 43, Ex. A, 44, Ex. A; Cole Ex. 1.

B.    The March 4 Hearing on the Motions for Continuance

        The motions for continuance were heard the morning of
March 4, 2014, at the time when the matters mentioned in the
February 4 and February 5 orders were scheduled to be heard.  At
the conclusion of the hearing, the court granted a continuance of
the hearings that originally were scheduled to be conducted on
March 4, not on the grounds urged by the Meyerses and Cole but,
instead, to give the Meyerses an opportunity to evaluate their
need to replace Cole as their attorney with another attorney
whose interest did not conflict with theirs.  Case No. 4:12-MC-
015-A, Doc. 49 at 3-7.

        In the order continuing the hearing, the court made findings
that virtually all of the significant statements made by Cole in
her affidavits in support of the motions for continuance were
untrue, that Cole was aware of the untruthfulness of those
statements when she made them, that the evidence provided by Cole
on her own behalf and on behalf of the Meyerses in support of
those statements was not credible, and that, for the most part,

_____

        [8]The Meyerses and Cole took the position in their motions for continuance that they first learned
that a hearing had been scheduled for March 4, 2014, when Cole received a message from Textron's
attorney on February 21, 2014, regarding exhibits for the hearing.  Cole Ex. 1 at 3, ¶ 15 (an assertion that
was repeated in each of the motions for continuance).

the testimony Cole gave at the hearing in support of those statements was false.  Id. at 3-5.

Because the nature of the evidence received at the March 4 hearing is so significant to both of the sanctions issues still before the court for decision, the court is discussing the evidence in some detail below.

### The Proof That Cole Received Notice of the Orders She Denied Receiving

In September 2006, Cole registered with the office of the court clerk for an account with the Electronic Case Filing system ("ECF") for this court, which gave her the right to receive electronic notice of all documents filed in a case in which she appeared as an attorney.  Tr. of Mar. 4 Hr'g at 122; Ct. Ex. 21 at first unnumbered page.  On May 28, 2013, Cole provided to the court clerk's office a Federal Bar Membership Update form that showed that her new business name was "Cole & Company, PLLC," that her new business address was "P.O. Box 2232, Rockwall, TX 75087," and that her new e-mail address was "cwc@coleandcompanypllc.com."  Tr. of Mar. 4 Hr'g at 107-108; Ct. Ex. 29.  The form, which was signed by Cole, stated that "[t]his form serves as my registration for electronic case filing and consent under FED. R. CIV. P. 5(b) to accept service

electronically, via my primary e-mail address noted above or any secondary e-mail address I may later add." Id.

The "cwc@coleandcompanypllc.com" e-mail address was the one the court clerk used in transmitting notices of orders to Cole after May 28, 2013, until Cole provided her affidavits to the court in support of the motions for continuance that were filed on February 28 and March 3, 2014.

In preparation for her March 4 hearing testimony, a member of the court's staff, Fleather Arnold, ("Arnold"), matched with copies of the orders Cole denied receiving the records of the court showing transmittal of notices of the orders to Cole. Tr. of Mar. 4 Hr'g at 112. Arnold identified a group of papers that were a set of orders that she printed out after reviewing the docket of this case, to which she attached the e-mail transmittal forms. Id. at 113; 119; Ct. Ex. 38. Each of those forms shows that notice of the order mentioned in it was sent, contemporaneously with entry of the order on the docket, to Cole by e-mail transmission to the cwc@coleandcompanypllc.com e-mail address that Cole had provided to the clerk's office on May 28, 2013, as the one to be used in transmitting items to her. Ct. Ex. 38. Notices of all of the orders Cole denied that she received were shown to have been sent to Cole. Id. The clerk's

15

records do not show that there was an unsuccessful transmission of any of the notices.  Tr. of Mar. 4 Hr'g at 118-120.

### Cole's Testimony That in October 2013 She Changed Her E-Mail Address and the Name of Her Law Practice

Cole testified that she quit using the cwc@coleandcompanypllc.com e-mail address on October 31, 2013.[9] Tr. of Mar. 4 Hr'g at 22-23, 31-33.  She said she does not recall receiving any e-mail at that address after October 31, 2013.[10] Id. at 32-33.  Also, she testified that she did not use the "Cole & Company PLLC" name after October 2013, unless she did so inadvertently.  Id. at 29.  She said that she has not practiced under any name other than just "Cynthia Cole" at any time since October 2013.  Id. at 30.

### The Evidence Proving That Cole's Testimony Concerning Her E-Mail Address, and the Name She Used in Her Law Practice, After October 2013 Was Knowingly False

Cole filed two documents in this miscellaneous action in December 2013, long after she swore she had discontinued use of the cwc@coleandcompanypllc.com e-mail address and the Cole & Company PLLC name, in which she used both.  On December 3, 2013,

---

[9]The cwc@coleandcompanypllc.com e-mail address is the one Cole provided to the court clerk on May 28, 2013, for use in transmitting her orders issued in cases in which she appeared as an attorney.  Supra at 14.

[10]At the March 4, 2014 hearing, the parties referred from time-to-time to the "number two e-mail address" or the "number three e-mail address."  The reference to the number two e-mail address was to "cwc@coleandcompanypllc.com", and the number three e-mail address had reference to "cyndeecole@ymail.com."  See Ct. Ex. 20.

she filed a document showing just below her handwritten signature
that she was practicing law as Cole & Company PLLC, and that her
e-mail address was cwc@coleandcompanypllc.com.  Ct. Ex. 31 at 5.
And, in a document she filed on December 10, 2013, Cole again
showed below her handwritten signature that she was practicing
law as Cole & Company PLLC and that her e-mail address was
cwc@coleandcompanypllc.com.  Ct. Ex. 8 at fourth unnumbered page.

Cole's contact information on the docket in the personal
bankruptcy case that she filed in the Dallas Division of this
court on January 9, 2014, shows that she was with Cole & Company
PLLC and that her e-mail address was cwc@coleandcompanypllc.com.
Ct. Ex. 28.  Within Court Exhibit 28 is a Verification of Mailing
List Cole filed January 13, 2014, over her electronic signature
showing that she practiced law as Cole & Company PLLC.  The
CM/ECF Notices of Electronic Filing within Court Exhibit 28 show
that Cole's electronic filing address was
cwc@coleandcompanypllc.com.  On January 15, 2014, the bankruptcy
clerk transmitted to her a notice at that address.  The notice
dismissing her personal bankruptcy case on January 24, 2014,
likewise was transmitted to Cole by the bankruptcy clerk's office
by use of the cwc@coleandcompanypllc.com e-mail address.  In each
instance, the document also was transmitted to Cole at the
cyndeecole@ymail.com e-mail address as the secondary address.

The bankruptcy clerk had for use as Cole's primary e-mail address the cwc@coleandcompanypllc.com address and cyndeecole@ymail.com as her secondary e-mail address.  Tr. of Mar. 4 Hr'g at 56-57. Cole admitted that she was receiving transmittals from the bankruptcy clerk at both e-mail addresses.  Id. at 85-86.

When Cole filed her second personal Chapter 7 voluntary bankruptcy case in the Dallas Division of this court on January 29, 2014, she again used Cole & Company PLLC as the name of her law practice and cwc@coleandcompanypllc.com as her e-mail address.  Ct. Ex. 27, first page.  On February 12, 2014, she filed in her second bankruptcy case a Disclosure of Compensation of Attorney for Debtor(s) over her electronic signature, which showed that she practiced law as Cole & Company PLLC and that her e-mail address was cwc@coleandcompanypllc.com.  The CM/ECF Notice of Electronic Filing in Court Exhibit 27 shows that the clerk's transmissions to Cole were at both e-mail addresses, with the primary transmission to cwc@coleandcompanypllc.com and the secondary to cyndeecole@ymail.com.  Id. at seventh page.

Court Exhibits 22, 23, 24, 25, and 26 all are copies of documents from the bankruptcy clerk's records of bankruptcy cases in which Cole was serving as an attorney during time periods after October 31, 2013.  The docket on each of those cases, printed out on either February 28, 2014, or March 3, 2014, shows

18

that Cole practices as Cole & Company PLLC and that her e-mail address is cwc@coleandcompanypllc.com.   Throughout those exhibits are items providing proof that long after October 31, 2013, extending up into March of 2014, Cole was continuing to use the cwc@coleandcompanypllc.com e-mail address as her primary e-mail address and to show that she was practicing law as Cole & Company PLLC; and, items in those exhibits show that after October 31, 2013, she regularly received from the bankruptcy clerk's office items addressed to the cwc@coleandcompanypllc.com e-mail address. She continued to use that e-mail address and the Cole & Company PLLC firm name below her signature on the documents she filed in those cases.

Cole's page on the State Bar of Texas website showed that as of March 4, 2014, her law practice name was Cole & Company PLLC.[11]   Ct. Ex. 32.

---

[11]Cole's page on the State Bar website falsely shows that Cole & Company PLLC is a firm consisting of 41 to 60 attorneys, engaged in "Bankruptcy, Insurance, Litigation: Commercial Litigation: Personal Injury." Ct. Ex. 32. Those representations are quite a contrast to the true facts. Cole testified that Cole & Company PLLC has had only one attorney, her, throughout its existence. Tr. of Mar. 4 Hr'g at 29, 97. She said that she conducts her law practice out of her home at 1108 Vail Court. Id. at 29-30.

### Cole's False Testimony That She Provided to the Clerk of This Court Change of Contact Information in October 2013 and Again in January 2014

Cole testified that on October 11, 2013, she mailed to the clerk of this court a completed Federal Bar Membership Update form that informed the clerk that she had changed her e-mail address from cwc@coleandcompanypllc.com to cyndeecole@ymail.com. Tr. of Mar. 4 Hr'g at 47-48; Cole Ex. 1, Ex. A.  And, she said that on January 2, 2014, she mailed to the clerk of this court another completed Federal Bar Membership Update form that showed the same change in her e-mail address.[12]  Tr. of Mar. 4 Hr'g at 86-87; Cole Ex. 1, Ex. B.  Cole said that she did not receive anything from the clerk's office in response to either of those Federal Bar Membership Update forms.  Tr. of Mar. 4 Hr'g at 48, 87-88.

### Proof That Cole Did Not Provide the Clerk of Court Change of Contact Information in October 2013 or January 2014

Leigh Lyon ("Lyon"), the Assistant Chief Deputy of Operations employed in the Dallas office of the clerk of this court, made a search of the records of this court to determine whether the court ever received the forms Cole testified she

---

[12]Cole, through her attorney, put into evidence at the hearing a copy of Cole's affidavit that was an exhibit to the motions for continuance that were filed March 3, 2014.  Tr. of Mar. 4 Hr'g at 20-21. Cole testified that she carefully reviewed the contents of the affidavit and that everything in the affidavit was true.  Id. at 17-18.  By that means, Cole incorporated under oath the statements she made in paragraphs 5 and 9 of her affidavit concerning the mailing by her to the clerk's office of the Federal Bar Membership Update forms.  See Cole Ex. 1, 1-2, ¶¶ 5 and 9.

mailed to the clerk's office on October 11, 2013 and January 2, 2014.  Tr. of Mar. 4 Hr'g at 99-100.  Had the clerk's office received either of those documents through the United States mail, they would have been disclosed in the search she conducted. Id. at 101.  From the work Lyon did, she would conclude that the clerk's office did not receive either of the forms.  Id.

When the clerk's office received copies of those forms as exhibits to Cole's affidavit attached to the March 3, 2014 motions for continuance of the March 4, 2014 hearing, the clerk's office changed Cole's ECF contact information to match up to the change that the forms indicated had been requested, so that from that point forward Cole's ECF e-mail address was cyndeecole@ymail.com.[13] Id. at 102-103.

In Lyon's search for change of contact information requests made by Cole, she found a Federal Bar Membership Update form Cole submitted to the clerk on May 28, 2013, requesting that the clerk change her contact information to show that her new firm name was Cole & Company PLLC, her new business address was P.O. Box 2232, Rockwall, TX 75087, and her new e-mail address was cwc@coleandcompanypllc.com.  Id. at 107-108; Ct. Ex. 29.  The

---

[13]The change in Cole's e-mail address was made on February 28, 2014, Tr. of Mar. 4 Hr'g at 103, which is the date of receipt by the clerk's office of a motion for continuance containing Cole's affidavit that was not in compliance with the court's filing requirements. Case No. 4:12-MC-015-A, Docs. 37, 40.

clerk's office responded to that update request with a message to Cole providing her new login and password information.  Tr. of Mar. 4 Hr'g at 108; Ct. Ex. 29 at second and third unnumbered pages.  If the clerk's office had received from Cole the Federal Bar Membership Update forms Cole claims to have mailed to the clerk's office on October 11, 2013, and January 2, 2014, the clerk's office would have responded by sending Cole a new login and password.  Tr. of Mar. 4 Hr'g at 109.

### The Instructions Cole Had Received Concerning Changing Her ECF Contact Information

A Local Rule of this court instructs any attorney who is a registered user of ECF, as Cole was, that when the attorney changes her e-mail address, she "must promptly change this information in ECF, following procedures set forth in the ECF Administrative Procedures Manual."  Tr. of Mar. 4 Hr'g at 121; Ct. Ex. 39.  The ECF registration instructions, which is on the main web page of the Northern District of Texas, tells attorneys exactly what they need to do to make a change in their ECF account.  Tr. of Mar. 4 Hr'g 122-123; Ct. Ex. 29.  Once an attorney has an ECF account, all they need to do to update any information is to follow the instructions.  Tr. of Mar. 4 Hr'g at 123.  The ECF registration instructions are given to all attorneys who register as a user of ECF.  Id. at 122-123.

<u>Cole's Misrepresentation, and Misuse, of a January 7, 2014
Telephone Conversation with a Deputy Clerk</u>

Cole gave the following description of a telephone

communication she had with Arnold, a member of the court's staff,

on January 7, 2014:

> Q.   Well, you say a member of the staff called you.
> What -- what was the nature of that telephone
> conversation?
>
> A.    . . . .
>
>       She contacted me on my cell phone, which is my
> phone number with the court, and left a voicemail.  I
> called her back within about 10 minutes.  She asked me
> if I had updated my contact information with the
> Northern District of Texas.  I told her that I had done
> that twice.
>
>       She said that she would check on it, and she said
> that there was a -- there was an order that you wanted
> to make sure that I received, and that I would get it,
> and later that day, I believe that I did.  And if that
> call wasn't on the 7th, it was on the 6th.  It was
> right around the exact -- that time.

Tr. of Mar. 4 Hr'g at 37-39.

Arnold, a court coordinator employed by the court clerk's

office, assigned primarily to work with the undersigned,

described the same conversation.  She testified that she was

instructed by the court on January 7, 2014, to call Cole to verify Cole's contact information.[14]  Tr. of Mar. 4 Hr'g at 110-111.  She left a message for Cole to return her call, and Cole did that day.  Id.  Once the conversation was completed, she made a memorandum of the conversation, which, in its entirety, stated as follows:

> I called Cynthia Cole at telephone number 469-328-0673 at 2:43 p.m. on January 7, 2014, left a voice mail message that I wanted to verify her mailing address, email and fax number.
>
> I received a call in response to my message at 2:48 p.m. on January 7, 2014 from Cynthia Cole.  She stated that she is in the process of changing addresses and that she is using 1108 Vail Court, Rockwall, Texas 75087 as her current address.  Ms. Cole says she will update her address with the court on tomorrow.
>
> Ms. Cole's stated that she does not have a fax number at the moment but her current email address is cyndeecole@ymail.com
>
> I told Ms. Cole that she will be receiving today in her email an order from the court.
>
> Before concluding my conversation with Ms. Cole, I verified the above information (her mailing address and email address).

Id. at 111-112; Ct. Ex. 36.  Arnold testified that the memorandum is an accurate summation of the telephone conversation she had with Cole on January 7, 2014.  Tr. of Mar. 4 Hr'g at 111-112.

---

[14]By then, the court naturally had a concern as to whether the court had correct contact information, bearing in mind the failures of the Meyerses and Cole to comply with orders issued by the court.

Cole did not say anything to Arnold to suggest that Cole had already done something to update her e-mail address or other contact information.  Id. at 112.

When Arnold finished her conversation with Cole on January 7, she caused a notice of the order the court had issued that day to be e-mailed to Cole, using cwc@coleandcompanypllc.com e-mail address that was in the clerk's ECF records as well as the cyndeecole@ymail.com e-mail address Cole gave her over the telephone.  Id. at 112-113, 114-116; Ct. Ex. 37.  Arnold did not update Cole's contact information because Cole said she was going to update it herself the next day.  Tr. of Mar. 4 Hr'g at 117. There was a method by which Cole could do that herself.  Id.

After Arnold testified, Pierce called Cole back to the stand, and developed the following response to Arnold's testimony:

> Q.   . . . . Ms. Cole, you heard Ms. Arnold's testimony
> about the conversation that you had.  Is that consistent
> with what you recall in the conversation?
>
> A.   I recall that I called her back from the grocery
> store, that she mentioned that my contact information
> was -- was awry, and as I recall it, I told her I would
> check on it tomorrow.  It was already the end of the
> day when I was calling her back, and as I recall, I
> told her I would check on it tomorrow.  Later that day,
> I got an e-mail to my Cole and Company ymail account,
> which I took as indication of it was working.
>
> Q.   It was to your which account?

25

A.   My ymail account.

Q.   Not the Cole account?

A.   No, I'm sorry, the ymail account.

Q.   Okay.  So, the next day, did you check on your contact information?

A.   I did not.  I had gotten the e-mail from the court on the 7th, and I took that to mean that my contact information was correct.

Tr. of Mar. 4 Hr'g at 125.

As the court made known after the evidence was concluded at the March 4, 2014 hearing, the court is satisfied that Cole testified falsely relative to her telephone conversation with Arnold.

### False Reason Given by Cole for Not Attending the January 9, 2014 Hearing

Even if Cole's excuse for violating the earlier issued orders were to be accepted as true, that excuse would not explain the non-attendance of the Meyerses and Cole at the January 9, 2014 hearing of which Cole was informed by notice of the January 7, 2014 order she admittedly received on January 7.  The January 7 order told her that she and the Meyerses were to be present at 2:00 p.m. in the Fourth Floor Courtroom of the United States Courthouse, Fort Worth, Texas, on January 9, 2014, for a hearing at which they were to be prepared to show cause why they

should not be sanctioned for their many violations of orders issued in this action.  Ct. Ex. 12 at 2.

Instead of being present with her clients for the hearing on January 9, Cole, the morning of January 9, filed her first personal Chapter 7 bankruptcy case.  Ct. Ex. 28.  Then, that same morning, she followed up with the notice she filed in this action of her bankruptcy case and her announcement, in that notice, that all hearings and other activities related to this sanctions action had been stayed.  Case No. 4:12-MC-015-A, Doc. 28.

Cole is not a novice bankruptcy attorney.  Bankruptcy law apparently has been her specialty.  Tr. of April 9 Hr'g at 13-14. Only the slightest legal research, if she did not already know the answer, would have told her that by reason of 11 U.S.C. § 362(b)(4) her bankruptcy filing did not stay sanctions actions as to her,[15] much less sanctions actions against her clients.[16]  Cole had ample time after receiving the January 7 order and before she filed her bankruptcy case to do any required research.  The court is satisfied, and finds, that Cole did not honestly believe the

---

[15]See In Re Berg, 230 F.3d 1165, 1167-69 (9th Cir. 2000); Alpern v. Lieb, 11 F.3d 689, 690 (7th Cir. 1993); Vol. 2, Alan N. Resnick & Henry J. Sommer, Collier Bankruptcy Manual, ¶ 362.05[4][b] (Matthew Bender 4th Ed.); see also Sabre Grp., Inc. v. European Am. Travel, Inc., 192 F.3d 126, 1999 WL 683863 at *2 (5th Cir. 1999).

[16]See Patton v. Bearden, 8 F.3d 343, 348-49 (6th Cir. 1993); Teachers Ins. & Annuity Ass'n of Am. v. Butler, 803 F.2d 61, 65-66 (2d Cir. 1986); Vol. 2, Alan N. Resnick & Henry J. Sommer, Collier Bankruptcy Manual, ¶ 362.03[3][d] (Matthew Bender 4th Ed.).

morning of January 9 that the filing of her bankruptcy case stayed this action as to her or the Meyerses.

### Cole's Use of the Cyndeecole@ymailcom E-Mail Address for the First Time in a Filing in this Action

It probably was no coincidence that only two days after Cole and Arnold had their January 7, 2014 telephone conversation Cole filed a document in this miscellaneous action in which she used, for the first time, below her handwritten signature the cyndeecole@ymail.com e-mail address rather than the cwc@coleandcompanypllc.com e-mail address. Id. That document was the notice of Cole's bankruptcy that she filed the morning of the date, January 9, when at 2:00 p.m. Cole and the Meyerses were to appear before the court for a hearing as to why they should not be sanctioned for failure to comply with the court's orders. Even on that document she continued to show Cole & Company PLLC as the name of her law practice. Id. Apparently Cole had not realized yet that she should claim that she no longer practiced as Cole & Company PLLC to be consistent with her claim that she no longer used the cwc@coleandcompanypllc.com e-mail address.

The appearance is that Cole had started between January 7 and January 9 formulating her plan to claim that she had not received orders because the clerk's office was not using her correct e-mail address, but her scheme still lacked refinements.

That probably explains why the papers in the personal bankruptcy
case she filed the morning of January 9 all showed that Cole was
continuing to use the cwc@coleandcompanypllc.com e-mail address
as well as the name Cole & Company PLLC in her law practice,
Ct. Ex. 28, and why she continued thereafter to use that e-mail
address and firm name in all of the bankruptcy cases in which she
served as the debtor's attorney or was the debtor.

### Testimony Given by Ms. Meyers on March 4 That Exposed the Falsity of Cole's Excuse That She Did Not Receive the Orders

As reluctant as Ms. Meyers was to be responsive to questions
posed to her at the March 4 hearing, <u>see</u> Tr. of Mar. 4 Hr'g at
131-134, 136, she let slip an admission that was inconsistent
with Cole's pretense that Cole had not been receiving orders
issued in this action. One of the orders Cole would not have
received if her excuse was truthful was an order the court issued
on December 23, 2013, informing the parties of the court's
tentative conclusion that the Meyerses and Cole should be
required to pay to Textron as sanctions $77,191.20 as attorneys'
fees and $2,233.01 as other litigation expenses. Ct. Ex. 10.
The following exchange occurred during the questioning of Ms.
Meyers at the March 4 hearing:

> Q.   Did you find out that the Court has tentatively
> concluded that you and your husband need to pay the Textron
> Financial Corporation --

> A.   Yes.
>
> Q.   -- 70-some-odd-thousand dollars, plus some expenses?
>
> A.   That's why I'm here, yes.
>
> Q.   <u>And when did you find that out</u>?
>
> A.   Well, again, we talked <u>about this.   There was supposed to be a hearing in December, so late November, and now again just this past week</u>.
>
> Q.   <u>So you talked about that back in November or December</u>?
>
> A.   <u>Twice, right</u>.
>
> Q.   And again this past week?
>
> A.   Again just recently, yes.

Tr. of Mar. 4 Hr'g at 135 (emphasis added).   When Cole followed

with a question of Ms. Meyers on that same subject, Ms. Meyers's

answer confirmed that she meant what she said in response to the

earlier questions on the subject:

> Q.   Did you, in December, receive a copy or discuss with me an order that said the Judge had ruled that we owed the -- that we could be held liable, and that he had made that decision in December?
>
> A.   Yes.

Id. at 136-137.

Eliminating any possible uncertainty on the subject, was the following question directed to Ms. Meyers and her answer:

Q.    . . . .

In December, apparently you became aware of certain things in December, according to an answer you made a minute ago, including a conclusion that the Court had reached, tentatively, that you and your husband and Ms. Cole owed Textron some money.

That was in December that you became aware of that?

A.    Yes.

Id. at 139-140.  This testimony was consistent with the testimony of Mr. Meyers that whenever Cole received an order, she would call him and they would discuss it.  Tr. of April 9 Hr'g at 226.

Needless to say, Cole could not have made the Meyerses aware of the December 23, 2013 tentative conclusion order in December unless Cole had received notice or a copy of the order before she made them aware of it.

### Cole's Incredible Lack of Curiosity After She Received the January 7, 2014 E-Mail Notice Following Her Telephone Conversation with Arnold

The e-mail Cole received January 7, 2014, after her telephone conversation of that date with Arnold, provided the following summary of the January 7 order:

ORDER:  The Meyerses and Cole are to be prepared to show cause at the hearing that is now set for 2:00 p.m. on 1/9/2014, before the undersigned in the Fourth Floor Courtroom of the United States Courthouse, Fort Worth, Texas, why they should not be sanctioned for their

> multiple failures to comply with orders of the court.
> (<u>see order for further specifics</u>)

Ct. Ex. 30 (emphasis added).

Cole testified that she believes that she clicked on the link in the e-mail and got a copy of the January 7 order. Tr. of Mar. 4 Hr'g at 62. That order made reference to several earlier orders of the court, and informed the Meyerses and Cole that they were to be prepared to show cause at the hearing scheduled for 2:00 p.m. on January 9, 2014, "why they should not be sanctioned for their multiple failures to comply with orders of the court, all as set forth above." Ct. Ex. 12 at 2. Notwithstanding those clear statements in the January 7 order that other orders had been issued by the court and that the Meyerses and Cole had failed to comply with those orders, Cole testified that it did not occur to her at that time that there had been an earlier order setting the hearing; and, she said that she does not recall that she looked at any of the other orders or tried to find out what any earlier order said. Tr. of Mar. 4 Hr'g at 61-62.

Cole had a PACER account at that time, <u>id.</u> at 42, which gave her ready access to each of the orders to which the January 7 order referred, and through PACER she could have reviewed each and every one of them from her home/office. The obvious reason why she did not is that she already had received notices or

copies of those orders, as they were issued, through the e-mail account she had registered with the clerk's office.

Even more bizarre, if one were to accept as fact that Cole truly did learn that the clerk was using an incorrect e-mail address for her, is Cole's testimony that she does not recall that she went into the PACER to see what orders she might have missed during the time period when she thought the e-mail address being used by the clerk was incorrect.  Tr. of Mar. 4 Hr'g at 90.

### Cole's Similar Lack of Curiosity When, According to Her, She Did Not Receive a Ruling in Response to Her December 10, 2013 Motion for Continuance Related to the Settlement Conference the Parties Were Ordered to Conduct by December 10

A similar state of affairs exists in reference to Cole's testimony that she did not make any inquiry as to why, if her other testimony were to be accepted, she had not received a ruling in response to her December 10, 2013 motion for continuance.  Cole claims she never received the order striking that motion.  Tr. of Mar. 4 Hr'g at 45.  She testified the court did not rule on that motion, but that she was not curious as to why the court failed to make a ruling.  Id.  Cole recognized that she could have looked at the docket and at the order itself through her PACER account, and that if she had done so, she would have seen that her motion for continuance had been stricken.  Id. at 46.  The obvious reason why Cole did not go on her PACER

33

account to see what happened to her motion for continuance is
that she had already received a notice or copy of the court's
order striking it.

### Cole's Repeated Excuses for the Evidence Establishing the Falsity of Her Main Excuse are Not Credible

Throughout her testimony at the March 4 hearing, Cole made
excuses for the existence of evidence that was inconsistent with
her excuse that she was not informed of orders of the court by
reason of a change in her e-mail address.  She said that she may
have continued to the use the Cole & Company PLLC name after
October 2013 "inadvertently."  Tr. of Mar. 4 Hr'g at 29.  As to
the bankruptcy court clerk's use of the
cwc@coleandcompanypllc.com e-mail address as Cole's primary
address, and cyndeecole@ymail.com as her secondary address, Cole
said that when she went into her bankruptcy court ECF account and
added cyndeecole@ymail.com as an e-mail address, she
unintentionally left cwc@coleandcompanypllc.com as her primary e-
mail address.

When explaining why she continued to use her
cwc@coleandcompanypllc.com e-mail address on pleadings she filed
in this action in December 2013, she said it was because "[she]
just failed to correct the signature block all the way down" and
that "it was a clerical error that [she] didn't change the e-mail

address on that document." <u>Id.</u> at 72.  She added that "[she]
would just say that this is a clerical error." <u>Id.</u> at 73.
According to her, the clerical error was changing in her
signature blocks her mailing address but failing to change to a
new e-mail address and to indicate that she no longer was with
the Cole & Company law firm. <u>Id.</u> at 73-74, 78.

In reference to the dockets in the bankruptcy cases she had
been handling, Ct. Exs. 23, 24, and 25, showing her e-mail
address to be cwc@coleandcompanypllc.com, she said that she would
"take steps to correct it today." <u>Id.</u> at 86.  She added that the
bankruptcy court papers show cwc@coleandcompanypllc.com as her
primary e-mail address because she "probably just clicked the
wrong box, and instead of changing [her] e-mail address, [she]
added a primary e-mail address" and that she "was assuming that
she just made a mistake." <u>Id.</u> at 89.

When questioned about the false information shown on her
page on the State Bar website, she said that she had no idea why
the page shows her firm size to be 41-60 except to say "[i]f I
clicked a block that said 41-60, it was an error." <u>Id.</u> at 98.

Cole's secondary excuses in an attempt to explain away evidence disproving her main excuse bring to mind the words of Sir Walter Scott that

> Oh, what a tangled web we weave
> When first we practice to deceive![17]

The court does not find any of Cole's explanations for the evidence that disproves her main excuse to be credible.

C.  **Findings and Conclusions Related to the Violations of the Orders and the False Excuse**

The court finds that the Meyerses and Cole violated, by noncompliance, the 1st through 10th orders, that Cole violated the 11th, and that all the violations were willful and intentional.  The court further finds that the excuse given by the Meyerses and Cole for not complying with the first nine orders was false.  In an attempt to defraud the court as well as Textron, they concocted out of whole cloth their claim that they did not receive the orders or notices of the orders.  The court further finds that the pursuit by the Meyerses and Cole of that course of action was dishonest, in bad faith, and constituted a frivolous multiplication by the Meyerses and Cole and of the proceedings.

---

[17]<u>Marmion</u>, Canto VI, Stanza 17.

III.

## Compensatory Sanctions for the Violations
## by the Meyerses and Cole of the Court's Orders
## Would be Proper, But Unnecessary

The court finds that Cole committed civil contempt of this court by willfully and intentionally violating, by noncompliance, each of the eleven orders mentioned on pages 5 through 10 of this memorandum opinion and order.  And, the court finds that the Meyerses committed civil contempt of this court by willfully and intentionally violating, by noncompliance, each of those orders, except the 11th order, which is directed only to Cole. Compensatory civil contempt penalties against the Meyerses and Cole would be proper,[18] and would be imposed if necessary to compensate Textron for the added litigation expenses it incurred because of the violations.

The court has concluded that, although a compensatory civil contempt sanction in the form of a fine payable to Textron would be a proper sanction for the violations by the Meyerses and Cole of the court's orders if there were not another method of

---

[18]In Norman Bridge Drug Co. v. Banner, the Fifth Circuit noted that civil contempt divides into two general classes, coercive and compensatory, and that "[c]ompensatory civil contempt reimburses the injured party for the losses and expenses because of his adversary's non-compliance," which "includes losses flowing from non-compliance and expenses reasonably and necessarily incurred in an attempt to enforce compliance." 529 F.2d 822, 827 (5th Cir. 1976).  See also Matter of Terrebonne Fuel & Lube, Inc., 108 F.3d 609, 612 (5th Cir. 1997).  In United States v. United Mine Workers, the Supreme Court noted that "[w]here compensation is intended, a fine is imposed, payable to the complainant." 330 U.S. 258, 304 (1947).  See also Clark v. Boynton, 362 F.2d 992, 998 (5th Cir. 1966).

37

compensating Textron, the more appropriate method of compensation here would be for the court to exercise its inherent power, as defined in Chambers v. NASCO, Inc., 501 U.S. 32, 47 (1991), to preserve the authority of the court, as well as to compensate Textron for expenses it has incurred during the narrow November 2013 through February 2014 part of the ongoing litigation to which it has been subjected by reason of the frivolous and bad faith conduct of the Meyerses and Cole.  An award under the court's inherent power will subsume a compensatory civil contempt fine that otherwise would have been ordered.

IV.

The Additional Sanction Sought by Textron Under
the Court's Inherent Power is Appropriate

A.   Pertinent Legal Principles

The fact that other sanctioning mechanisms, such as Rule 11 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1927, are available for a level of relief for a severely harmed victim of bad faith litigation conduct does not prevent the court from exercising its inherent power to grant the victim further relief if the ends of justice require it.  In Chambers v. NASCO, Inc., the Supreme Court directed its attention to that very point, explaining:

There is . . . nothing in the other sanctioning
mechanisms [Rule 11 and § 1927] or prior cases

38

interpreting them that warrants a conclusion that a
federal court may not, as a matter of law, resort to
its inherent power to impose attorney's fees as a
sanction for bad-faith conduct.  This is plainly the
case where the conduct at issue is not covered by one
of the other sanctioning provisions.  But neither is a
federal court forbidden to sanction bad-faith conduct
by means of the inherent power simply because that
conduct could also be sanctioned under the statute or
the Rules. . . . [W]hen there is bad-faith conduct in
the course of litigation that could be adequately
sanctioned under the Rules, the court ordinarily should
rely on the Rules rather than the inherent power.  But
if in the informed discretion of the court, neither the
statute nor the Rules are up to the task, the court may
safely rely on its inherent power.

. . . . Much of the bad-faith conduct by Chambers . . .
was beyond the reach of the Rules; his entire course of
conduct throughout the lawsuit evidenced bad faith and
an attempt to perpetrate a fraud on the court, and the
conduct sanctionable under the Rules was intertwined
within conduct that only the inherent power could
address.

501 U.S. 32, 50-51 (1991) (citations omitted).

And, in Chambers, the Court specifically commented on a

situation, such as exists here, where a party has willfully

disobeyed orders of the court, explaining:

[A] court may assess attorney's fees as a sanction for
the "'willful disobedience of a court order.'"  Thus, a
court's discretion to determine "[t]he degree of
punishment for contempt" permits the court to impose as
part of the fine attorney's fees representing the
entire cost of the litigation.

. . . . [A] court may assess attorney's fees when a
party has "'acted in bad faith, vexatiously, wantonly,
or for oppressive reasons.'"  In this regard, if a
court finds "that fraud has been practiced upon it, or
that the very temple of justice has been defiled," it

39

may assess attorney's fees against the responsible
party, as it may when a party "shows bad faith by
delaying or disrupting the litigation or by hampering
enforcement of a court order."  The imposition of
sanctions in this instance transcends a court's
equitable power concerning relations between the
parties and reaches a court's inherent power to police
itself, thus serving the dual purpose of "vindicat[ing]
judicial authority without resort to the more drastic
sanctions available for contempt of court and mak[ing]
the prevailing party whole for expenses caused by his
opponent's obstinacy."

Id. at 45-46 (citations omitted).

In Positive Software Solutions, Inc. v. New Century Mortg.
Corp., 619 F.3d 458-460 (5th Cir. 2010), the Fifth Circuit gave

effect to Chambers by holding that a district court may use its

inherent power to sanction conduct that is in direct defiance of

the sanctioning court or constitutes disobedience to the orders

of the judiciary.  An apt illustration in a Fifth Circuit

decision of the use a district court can make of its inherent

sanctioning power is found in Lubrizol Corp. v. Exxon Corp., 957

F.2d 1302, 1308 (5th Cir. 1992), in which the Fifth Circuit

affirmed a sanction of $2,424,462.04 in attorneys' fees and

expenses for an entire course of litigation for the plaintiff's

failure to comply with an order directing plaintiff to submit

specific information to the court.

A sanction under the court's inherent power must be

accompanied by a specific finding by the court that the party

40

and/or his attorney acted in bad faith.  See Kipps v. Caillier,
197 F.3d 765, 770 (5th Cir. 1999).  Bad faith may be found in
actions that led to the litigation as well as in the conduct of
the litigation, including the failure to comply with court
orders.  See In Re W. Fidelity Mktg., Inc., No. 4:01-MC-0020-A,
2001 WL 34664165 at *19 (N.D. Tex. June 26, 2001).

B.   Other Factors Pertinent to Textron's Sanction Request

     The facts discussed under the preceding section II of this
opinion are pertinent to Textron's request for sanctions under
the court's inherent power.  They show, and the court finds, that
starting in the late Fall of 2013 and going through this date,
the Meyerses and Cole have engaged in bad faith litigation
conduct in relation to this miscellaneous sanctions proceeding.
They have taken false and frivolous positions in their assertions
that they did not receive orders of the court, and their
disregard of those orders has multiplied and prolonged these
proceedings.  Because of the conduct described in section II,
Textron's counsel made a fruitless appearance before the court
for a hearing on January 9, 2014, and then were required to
participate in the hearing conducted on March 4, 2014.  In
addition to that, Textron's counsel have been required throughout
to monitor actions of the court related to the violations by the

41

Meyerses and Cole of the court's orders and to conduct whatever research was appropriate in reference thereto.

The court finds that the Meyerses and Cole have acted in bad faith, vexatiously, wantonly, and for oppressive reasons in connection with this miscellaneous action at all times since November 2013 by engaging in the conduct described in section II. They have delayed and disrupted the progress of these proceedings, and by their conduct they have denied the court and Textron the benefit of compliance with the court's orders.  Their conduct was an attempt to perpetrate a fraud on the court.

The conduct described in section II is but a continuation of the bad faith litigation conduct of the Meyerses and Cole directed against Textron that started years ago--conduct that is described in part on pages 8-19 of the April 16 Opinion and pages 5-21 of the January 16, 2014 order that is marked Court Exhibit 15.  The Meyerses and Cole continued to burden Textron and the court with baseless litigation long after they had lost their legal right to do so by reason of adverse rulings in earlier litigation.  They continued to pursue in this court litigation against Textron that started in the bankruptcy court as a petition in intervention in an adversary proceeding, even though, pursuant to a settlement agreement, the bankruptcy court had dismissed with prejudice earlier litigation brought at the behest

42

of the Meyerses in a different name based on the same claim.  Tr.
of April 9 Hr'g at 79-80.

After the litigation they continued to pursue was dismissed
with prejudice by this court, the Meyerses and Cole filed yet
another lawsuit, in yet another name, against Textron in the form
of the 353 Lawsuit.  No reasonable litigant or attorney would
honestly believe that litigation conduct of that sort would be
appropriate.  Conduct of the Meyerses and Cole leading up to the
Rule 11 sanctions requests Textron made shortly after the 353
Lawsuit was filed was bad faith litigation conduct engaged in
frivolously by the Meyerses and Cole.  They engaged in that
conduct in bad faith, vexatiously, wantonly, and for oppressive
reasons directed against Textron.

While the conduct of Cole has been the focus of most of the
discussion in the April 16 Opinion and the preceding parts of
this opinion, the court is satisfied, and finds, that the
Meyerses were aware of, cooperated in, and encouraged Cole to do
all of the inappropriate things described in the April 16 Opinion
and the earlier parts of this opinion.  The Meyerses were not
passive litigants/clients.  They invested over $1,000,000 in the
pursuit of their litigation against Textron, id. at 198-199, and
they were actively involved in the pursuit.  The Meyerses and
Cole talked about these proceedings "on an almost daily basis."

Id. at 41; see also id. at 47.  The Meyerses reviewed pleadings

before they were filed by Cole.  Id. at 47-48, 68.  Cole

testified that the Meyerses have been very involved in their

litigation since Cole started representing them.  Id. at 48.  The

Meyerses bore the expense of all the litigation against Textron.

Id.  They personally attended all substantial depositions, id. at

61, and they reviewed documents that were produced in the

document production discovery, id. at 63-64.  Cole summed up by

testifying that the Meyerses were active participants in the

litigation.  Id. at 64.

The court is satisfied, and finds, that the Meyerses were

willful, voluntary, and knowing participants in all of the

inappropriate litigation conduct mentioned above, and concludes

that they should be held accountable, along with Cole, for that

conduct.

The sanction award, which was limited to the expense

incurred by Textron in the district court defense of the 353

Lawsuit, granted Textron against the Meyerses and Cole by the

April 16 Opinion dealt with a relatively small part of the total

litigation expense to which the Meyerses and Cole have put

Textron by their bad faith litigation conduct.  Had the Meyerses

and Cole appropriately responded in August 2012 to the notice

Textron gave them before it filed its motion for Rule 11

sanctions in the 353 Lawsuit, Textron Ex. 59, the matter of
sanctions would have become moot, and this miscellaneous
sanctions proceeding would not have been required.  Rather than
to pay heed to Textron's letter/notice, the Meyerses and Cole
continued to pursue their frivolous 353 Lawsuit all the way
through the Fifth Circuit, thus creating the need for these
sanctions proceedings, which the Meyerses and Cole have so badly
disrupted, to go forward.  Then, when faced with these sanctions
proceedings, they thumbed their noses at the court as well as
Textron by repeatedly violating court orders and then concocting
and advocating a set of falsehoods as their excuse for doing so.
They even chose to violate the court's orders to which their
excuse did not apply.  Their conduct was frivolous and in
disrespect of the rights of Textron and the authority of this
court.  A more willful, disruptive, and disrespectful abuse of
the judicial process is hard to imagine.

The court has concluded that no rule or statute is up to the
task of addressing the inappropriate litigation conduct in which
the Meyerses and Cole engaged in relation to this miscellaneous
action during the Fall of 2013 and the Winter of 2014, thus
making proper the exercise by the court of its inherent power to
address it.

45

C.   <u>The Nature of the Sanction the Court is Imposing</u>

An appropriate sanction is to require the Meyerses and Cole, jointly and severally, to make a payment to Textron equal to the reasonable litigation expenses it incurred from November 2013 through February 2014, in connection with this miscellaneous action.  The course of conduct of the Meyerses and Cole throughout that period of time was in bad faith, an attempt to frustrate Textron's legitimate sanctions requests, and an attempt to disrupt these proceedings and to perpetrate a fraud on the court.  Such a sanction will serve the dual purpose of vindicating this court's authority, without resorting to a more drastic sanction, and of compensating Textron for at least a part of the litigation expenses caused by the obstructive and bad faith conduct of the Meyerses and Cole.[19]  No lesser sanction would adequately address the inappropriate litigation conduct of the Meyerses and Cole.  The ends of justice require such a sanction.

D.   <u>The Dollar Amount of the Sanction the Court is Ordering</u>

In the document Textron filed April 30, 2014, <u>supra</u> at 3, concerning Textron's fee calculations, Textron acknowledged that

---

[19]The court does not consider that the sanction the court is imposing on Cole by this order supplants the possible disbarment of Cole, which is before the court for consideration in a separate miscellaneous action.

the previous dollar amount it used as attorneys' fees it incurred in connection with this miscellaneous action from November 2013 through February 2014 was incorrect, and that the correct amount is $82,406.70, to be combined with expenses of $1,287.17, making a total amount of $83,693.87.

The court is satisfied from the evidence received at the April 9-10, 2014 hearing, and finds, that the corrected amount of attorneys' fees of $82,406.70 provided by Textron in its April 30, 2014 filing is a reasonable amount for attorneys' fees necessarily incurred by Textron during the November 2013 through February 2014 time period, and that it is an appropriate amount to include in the sanctions award.[20]  When the reasonable and necessary amount of other litigation expenses incurred by Textron during that same time period of $1,287.17 are added to the attorneys' fees, the total to be awarded as a sanction is $83,693.87.

---

[20]The evidence received at the April 9-10, 2014 hearing persuaded the court that the attorneys for Textron exercised billing judgment in determining the amount to be included in their calculations, and considered all the pertinent factors in calculating what under Fifth Circuit law constitutes an amount of attorneys' fees that appropriately can be awarded as a sanction.

When Textron filed its revised calculations of attorneys fees on April 30, 2014, the court issued an order on that date directing the Meyerses and Cole to respond to Textron's filing by 2:00 p.m. on May 7, 2014, if they questioned the reasonableness, necessity, or accuracy of Textron's recalculations of attorneys' fees, as presented by Textron in their April 30 filing.  Neither of the Meyerses nor Cole filed such a response.  Therefore, the court is taking their silence to be an acceptance of the reasonableness, necessity, and accuracy of Textron's recalculations.

V.

Order

Therefore,

The court ORDERS that Textron have and recover from the Meyerses and Cole, jointly and severally, $83,693.87 as reasonable litigation expenses, including attorneys' fees, incurred by Textron in connection with this miscellaneous action from November 2013 through February 2014.

SIGNED May 9 , 2014.

_____
JOHN McBRYDE
United States District Judge